Lea, Sp. J.,
delivered tlie opinion of the court:
This bill was filed by complainants in behalf of themselves and other taxpayers of the city of Chattanooga, to enjoin the mayor and aldermen from issuing any scrip, treasury warrants, currency note, bill, or other evidence of debt, until legal authority is first obtained for so doing. •
The bill alleges that by an act of tbe general assembly of the state, approved on the 20th day of March, 1873 [Acts 1873, ch. 59], entitled “An act to provide for the issuance of bonds by the cities,” it is provided that in no case shall the authorities of cities having more than 8,000, and less than 20,000 inhabitants, issue bonds or other evidences of debt until authorized by a two-third vote of the qualified voters of such city, at an election held for that purpose, and when duly authorized so to- do, by an election held as aforesaid, such authorities are empowered to issue bonds or evidences of debt, -not exceeding $100,000, in addition to the debts outstanding at the time of the passage of said act; that Chattanooga contains less than 20,000 inhabitants; that authority lias been given by the requisite number of votes, at an election, to issue $100,000 to' the Cincinnati Southern Railroad Company; that without any authority, by a vote of the qualified voters of said city, said board of mayor and aldermen have, since the passage of said act of the general assembly, issued evidences of debt amounting to more than $90,000, and that such evidences *24 of debt consists of warrants on the treasurer, drawn by the mayor and countersigned by the recorder, currency warrants, which are due in one and three years, which are promissory notes, having the form and general appearance of banlc bills; that the .treasury warrants are payable in city scrip; that by this creation of debts, the defendant has greatly depreciated the credit of the city — so much so that said scrip is now bought and sold at from forty to fifty cents on the dollar; that notwithstanding said depreciation, defendants were still issuing large sums of said scrip; that contracts are made payable in cash, hut are paid in issues of the city at their cash val lie, and thus two dollars or more of scrip will he paid for one dollar of indebtedness; that by this means, bankruptcy and ruin is being brought upon the taxpayers; that defendants he required to answer and ■ state the amount of evidences of indebtedness issued since the passage of the act of the 20th of March, 1873, in what it consists, and the character of the same, aind by what authority issued.
The defendant answers, after a motion to dismiss for ivant of jurisdiction of subject-matter and parties, which was overruled by the court, that the entire funded and floating debt of the city is between one hundred and fifty-four and one hundred and fifty-eight thousand dollars, besides some five thousand dollars or more not audited; that since March 20, 1873, about seventy or eighty thousand dollars of indebtedness have been issued; that they issued the warrants and scrip under the authority of, and for the purpose specified in, the municipal charter, and to accomplish the objects of their incorporation, and for providing for the payment of the debts and expenses of the city; that upon the coming into office of the present board, they found no money in the treasury, and a large outstanding indebtedness, and being. deprived by the action ¡of the general assembly of the state, ,at its last session, of the power to enforce the collection of taxes for the years 1874-- *25 75, they issued warrants and scrip, believing sucb a course to be necessary for tlie maintenance of the city government, and for the best interests of the people; that they have the right to issue warrants upon their treasury, whether they have money therein or not, and the right to issue scrip. That the credit of the city is depreciated, but not by any illegal creation of debt, but by the 'action of the last legislature suspending the collection of taxes; that in one transaction they paid $3,364.83 in scrip, ranging at the rate of from 50 to 75 cents on the dollar; at another time they paid $529.96 in scrip, at from 60 to 75 cents; at another time, $2,500, at 60 cents; at another, $1,143.20, at 50 cents on the dollar, and $1,300 was paid at 62 or 63 cents, and some few other payments at from 45 to 60 cents, were made; that warrants on the treasury were paid in city scrip, bearing ten per cent, interest, if the holder so desires it; that warrants were issued payable in city scrip; that the scrip was not issued to circulate as currency; that the form of the scrip is:
State oe Tennessee. [1.]
One year after date, the Board of Mayor and Aldermen of the city of Chattanooga, will pay one dollar to- bearer.
.-, Thomas Taylob,
Auditor. Mayor.
And indorsed: “This note is receivable for all taxes and other dues of the city, on presentation.” That of these are now outstanding:
Warrants on treasurer.$41,183.23
Ten per cent, scrip. 26,278.89
One year scrip. 8,381.00
Three years’ scrip. 21,771.00
Three years’ interest on 10 per cent, scrip. .. . 7,458.42
That $100,000 in bonds has been voted tO' the Cincinnati Southern Railroad Company, but the same is not yet issued; that they have been governed by a conscientious *26 desire to discharge their duty, and that no1 expense has been incurred or evidence of indebtedness issued but that which they believed to be necessary for the good order, government and improvement of the city, and such as is contemplated in the charter under which they acted. It is admitted that Chattanooga contains a population less than twenty thousand. The cause was heard upon the bill, answer and exhibits, and an injunction granted, and defendants have appealed to this court.
The first question presented by the case tor our determination is, had the chancery court jurisdiction of the subject and of the municipal conduct of the defendant by bill filed by a taxpayer? It is insisted for the defendants that illegal acts, such as defendants are charged with, effect the whole public, and the public must, by its authorized officers, institute the proceeding to’ prevent or redress the illegal act, and that, therefore, the attorney-general was the proper person to file this bill; and we are referred to the reports of several states thus holding. The better and more universal doctrine is, that any taxpayer may bring his bill in equity to prevent the corporate authorities from acting ultra vires, where the effect will be to impose on him an unlawful tax, or to increase his burden of taxation. 2 Dillon on Municipal Corporations, sec. 731 [3d ed., see. 914], says: “In this country the right of property holders or taxable inhabitants to resort to- equity to restrain municipal corporations, and their officers, from transcending their lawful powers, or violating their legal duties in any -mode which will injuriously affect the taxpayers, such as making an unauthorized appropriation of the corporate funds, or an illegal disposition of the corporate property, or levying and collecting void and illegal taxes and assessments upon real property .... has been affirmed or recognized in numerous cases in many of the states. It is the prevailing doctrine on this subject. It can, perhaps, be vindicated upon principle, in view of the nature of the *27 powers exercised by municipal corporations, and tbe necessity of affording easy, direct, and adequate preventive relief against tbeir abuse.
“It is better that those immediately affected by corporate abuses should be armed with the power to interfere directly in. their own names than to compel them to rely upon the actions of a distant state officer.”
The action of the chancellor, therefore, in overruling the motion to dismiss the bill for want of jurisdiction, was proper. The charter of the city of Chattanooga provides that the corporation “shall have full power to borrow money on its bonds for any object that its authorities may determine to be important to the promotion of its welfare, and is not made improper by existing law, provided that the sum borrowed under the provisions of this section shall not exceed the sum of fifty thousand dollars without being specially authorized to do so> by a majority of the qualified votes of said city.”
The unconstitutionality of the act of March 20, 1873, has been argued with great earnestness, because the caption of the act does not state the subject of the act, and because it repeals the section just quoted from the charter of incorporation of the city of Chattanooga. In the view we have taken of this case, it is immaterial whether said act is constitutional or unconstitutional, or whether it repeals any part of the charter or not. Neither by the act of March 20, 1873, nor by the charter, has the corporation any power to issue warrants on the treasurer, or city scrip for the purpose of raising money for the ordinary expenses of the corporation. Warrants on the treasurer may be given by an authorized officer to pay money, but only as evidences to him that the debts had been audited by the properly authorized officers of the body, and serve as vouchers to him for.his disbursements. Mayor and Council of Nashville v. J. G. Fisher et al., Nashville, 1875. [December term, 1874, and reported in 1 Shannon’s Cases, *28 345.] If there be not money in. the treasury, then the corporation should borrow, as provided in the charter, or by existing law, or they should levy and collect such tax as to raise whatever sum is needed, and if they can neither borrow nor raise the money by taxation, to meet their expenditures, then they should cease their expenditures until they can thus realize according to law.
But for no purpose had the corporate - authorities the right to issue warrants on the treasury, payable in city scrip, or to issue the city scrip. Their action was illegal and contrary to law and public policy. The city scrip is about the size, and upon the same kind of paper, and in every respect very much like, national bank notes, and was doubtless designed to circulate as currency.
The court will strictly construe municipal charters, and require clear authority for the powers assumed to be exercised under them. While these defendants aver that they have acted in the utmost good faith, yet so much abuse of power, not to say corruption, has been found in some municipalities, and such onerous and ruinous burdens placed upon the taxpayers, that, to use the language of a distinguished author, "it is the part of true wisdom to1 keep the corporate wings clipped down to the lawful standard.”
Let the decree be modified, as indicated in this opinion, and the injunction be made- perpetual.