STATE *ex rel.* ALLEN *v.* AMERICAN GLANZSTOFF CORPORATION *et al.*

(*Knoxville*, September Term, 1933.)

Opinion filed June 25, 1934.

Louis Chambers, Watson Chambers, and W. R. Chambers, all of Lebanon, and Miller, Miller & Martin, S. W. Price, and J. R. Gardner, all of Johnson City, for appellant.

Cox, Taylor & Epps, of Johnson City, and George F. Dugger, and R. C. Campbell, both of Elizabethton, for appellee Carter County.

Mr. Chief Justice Green delivered the opinion of the Court.

This is a suit for mandamus and other relief on the relation of a citizen of Carter county, describing himself as a taxpayer, to collect or force collection from the American Glanzstoff Corporation and the American Bemberg Corporation of county taxes for the years 1929, 1930, and 1931. The chancellor dismissed the bill, and the relator has appealed.

The defendant corporations are chartered under the laws of Delaware, are allied concerns, owning and operating large plants in Carter county for the manufacture of artificial silk and other commodities, which plants represent an investment of several million dollars.

The owners of the Bemberg enterprise made investigation as to a suitable site for their plant before it was located. There was a keen competition among different sections of the country to secure the location of this busi-

ness. The chamber of commerce of Elizabethton in Carter county and the chamber of commerce of Johnson City in an adjoining county, together with numerous prominent citizens, got in touch with the Bemberg officials and presented a strong plea to obtain the enterprise for Carter county. All the citizens of Carter county were greatly interested in this effort, and on August 13, 1925, the county court of Carter county passed a resolution undertaking to remit all county taxes on the Bemberg Corporation for a period of ten years from January 1, 1926, provided that corporation chose Carter county as the site of its said plant.

Later, in 1927, the same interests projected the plant now operated by the Glanzstoff Corporation. A like effort was made to secure the location of that plant in Carter county, and to this end, on July 5, 1927, the county court of Carter county passed a resolution undertaking to remit county taxes on the plant of the Glanzstoff Corporation for a period of ten years from July 1, 1927, provided the said plant was located in Carter county.

In view of the considerations mentioned, and for other considerations, both plants were located in what is known as Happy Valley, in Carter county. As stated above, these enterprises represent a large investment. The Bemberg plant was assessed for state taxes in 1929 at $2,438,000 and the Glanzstoff plant was assessed for state taxes for that year at $2,183,500. Both concerns, in addition to these investments, have expended large sums of money in Carter county, given employment to hundreds of citizens of Carter county, and by reason of the location of such plants in Carter county the assessable valuation of the property in that county, exclusive of defend-

ants' property, has been increased more than a million dollars.

Prior to the location of these concerns in Carter county the taxable property therein was assessed at about $7,000,000. Since that time, exclusive of defendants' property taxable property has reached a value of more than $8,000,000. The property of the defendants, according to the assessed value for state taxes, is of about half the value of all the other property in Carter county. County taxes on the Bemberg Corporation for the year 1929, if levied at the prevailing rate, would amount to $69,483. County taxes on the Glanzstoff Corporation for that year, if levied at the prevailing rate, would amount to $62,229. For the years 1930 and 1931 the tax rate of Carter county was somewhat higher.

The relator contends that the county court lacks both constitutional and statutory authority to exempt the properties of these enterprises from taxation, and that the resolutions of the county court undertaking to remit such taxes for the periods stated are mere nullities. It is to be conceded, under authority of *Railway Co.* v. *Wilson County,* 89 Tenn., 597, 15 S. W., 446, that these resolutions, in the first instance, were invalid. Possibly, under that decision, Carter county is now at liberty to repudiate these resolutions, although it does not appear from the opinion that an estoppel was pleaded against Wilson county in the case just above mentioned.

*Railway Co.* v. *Wilson County,* was decided in 1891, and the doctrine of equitable estoppel has been much developed since that time. Recently this court has held a county officer, in one case, and a county itself, in another case, precluded from attacking the constitutionality of

acts of the Legislature, theretofore, in their dealings with others, recognized as valid, and of which acts the county officer and the county had obtained the benefits. *Roberts v. Roane County,* 160 Tenn., 109, 23 S. W. (2d), 239; *Saylor* v. *Trotter,* 148 Tenn., 359, 255 S. W., 590; Id., 148 Tenn., 375, 257 S. W., 93. We do not, however, pass on the question of estoppel herein raised against Carter county, since we are satisfied the relator is not entitled to maintain this suit.

The general rule is that a citizen cannot maintain a suit to restrain (*a fortiori* to compel) action of state or municipal authorities unless they are acting illegally and the effect of their illegal action will be to occasion the citizen some specific injury; not merely an injury in common with the body of citizens. *Patton* v. *Chattanooga,* 108 Tenn., 197, 65 S. W., 414; *Reams* v. *Board of Mayor and Aldermen of McMinnville,* 155 Tenn., 222, 291 S. W., 1067, 1068.

As to taxpayers, in the latter case, it is said: "The right of taxpayers to resort to a court of equity to enjoin county and municipal authorities from transcending their lawful powers, or violating their legal obligations, is conceded by all the authorities if such conduct would impose a burden of taxation, for the imposition of such burden upon taxpayers is not common to citizens who pay no taxes. *Colburn* v. *Chattanooga,* 2 Shan. Cas., 22; *Kennedy* v. *Montgomery County,* 98 Tenn., 165, 38 S. W., 1075; *Patton* v. *Chattanooga,* 108 Tenn., 222, 65 S. W., 414."

The relief herein sought by relator will neither relieve him of any special burden, nor confer upon him any special benefit. The effort is to collect county taxes for

1929, 1930, and 1931. The relator says that he has paid such taxes as he owed for those years. If the taxes said to be due from defendants are collected, they will be applied to the purposes to which they were allocated when the county levies for the particular years were made. Relator will get none of his money back.

It is difficult, therefore, to see how the relator brings himself within the test prescribed in *Reams* v. *Board of Mayor and Aldermen of McMinnville, supra.*

██ It is urged, however, by counsel that the ruling in *State ex rel. Bonner* v. *Andrews,* 131 Tenn., 554, 175 S. W., 563, is decisive of relator's right to bring this suit. In that case it was declared that taxpayers of the city of Nashville might, by mandamus, compel city officers to collect privilege taxes imposed by statute where the officers charged with the duty of collecting taxes made no attempt to do so.

A good many things were said in the opinion in *State ex rel. Bonner* v. *Andrews,* that were unnecessary to a decision of a single question presented to the court. Moreover, an unusual state of facts was presented. The sale of liquor had been prohibited in Tennessee and made a penal offense. As an added deterrent to such sales, a privilege tax was imposed upon those engaging therein. Authorities at Nashville had made no effort to enforce the penal statute nor to collect the privilege tax, and the sale of whisky continued openly. Under such circumstances, in the case mentioned, the ruling relied on by relator was made.

In *State ex rel. Bonner* v. *Andrews,* following the argument in Dillon's Municipal Corporations, vol. 4, pp. 2763-2785, the court likened the inhabitants of a municipal cor-

poration to the stockholders of a private corporation. It was reasoned that, since the stockholders of a private corporation, when the governing body of such corporation unlawfully and wrongfully refused to take steps to redress an injury to the corporation, might themselves institute suit in behalf of the corporation, therefore the inhabitants of a municipality, under like conditions, were entitled to maintain a suit to redress a municipal wrong.

If the analogy between the stockholders of the private corporation and the inhabitants of a municipal corporation is good, it may be admitted that the foregoing argument is sound. But the relator's case is still not advanced.

In order to justify a suit by stockholders on behalf of a private corporation, there must have been a refusal, or conduct tantamount to refusal, on the part of the board of directors to sue, and that refusal must have been such as amounted to a clear default on the part of the directors, involving a breach of duty. *Memphis Gayoso Gas Co.* v. *J. M. Williamson et al.,* 56 Tenn. (9 Heisk.), 314; *Wallace* v. *Lincoln Savings Bank,* 89 Tenn., 630, 15 S. W., 448, 450, 24 Am. St. Rep., 625.

In *State ex rel. Bonner* v. *Andrews,* there was a flagrant breach of duty by the city authorities. The right of the city to collect these privilege taxes was clear and unembarrassed. The conduct of the authorities encouraged a prohibited traffic, promoted lawlessness, and tended to discredit the city.

The situation here before us is not the same. Recurring to the analogy of the private corporation, the bare refusal of the directors of such corporation to bring a suit does not authorize any dissatisfied stockholder to bring

such suit on behalf of the corporation. The directors have a wide discretion as to such matters. ''It is not the duty of the managers of such association to bring suit upon every supposed wrong or injury to the corporation. If it were so, strangers could never know when a settlement, compromise, or adjustment was a finality, if the matter was subject to be overhauled at the suit of any discontented shareholder. So a suit might appear so desperate, or be so expensive, or, for good reasons, impolitic, that creditors might, in the exercise of a sound discretion, deem it unwise to engage in litigation. In such case, if the refusal be in good faith, the courts will rarely suffer a shareholder to overturn such decision by entertaining his suit for the same cause of action.'' *Wallace* v. *Lincoln Savings Bank, supra.*

We are not prepared to say, in view of the peculiar facts of this case, that the governing authorities of Carter county were not justified, by reason of the hazards of the litigation, in shunning a suit to collect the taxes here sought to be recovered, as it appears they did. We are, however, prepared to express the opinion that a court of equity will not compel a corporation, private or municipal, to bring a suit of this nature, or permit a stockholder or inhabitant on behalf of the corporation to bring such a suit, when the maintenance of that suit by the corporation would be an act of bad faith. This, even though the legal right be clear. A decree for relator would not ultimately profit the county morally or materially.

Largely in consideration of the tax exemptions offered the defendants by Carter county (and this is necessarily true), these enterprises were there located. Although the county court exceeded its authority in making these

promises, the defendants acted upon such promises, and the county court has honestly endeavored to live up to its word. It would indeed be harsh treatment to wrest from these defendants the aggregate of the taxes sued for, with interest and penalties, which would amount to more than $500,000. Under prevailing conditions it is an effort for industry to move at all. No enterprise could easily withstand such a staggering blow as the decree which relator here seeks.

For the reasons stated and for other reasons, this court is unwilling to interfere with the discretion which the county court of Carter county has exercised in refusing to sponsor this litigation.

The chancellor was of opinion that the relator did not bring the suit in good faith, but was actuated by selfish or mercenary motives. Believing that the relator did not come into court will clean hands, the chancellor dismissed the bill on this account. The relator strongly denies such imputation, and we have not found it necessary to go into this question of fact. In any event, the county having declined to bring the suit, the relator will not be permitted so to do, for the reasons we have set out.

The decree of the chancellor is affirmed.