McClung *v.* City of Elizabethton *et al.*

(*Jackson,* April Term, 1937.)

Opinion filed May 24, 1937.

456

Webb, Baker & Goodman, of Knoxville, J. A. Susong, of Greeneville, Alfred W. Holman, of Cincinnati, Ohio, Seiler & Hunter, of Elizabethton, Homer Goddard, of Maryville, and S. C. Williams, of Johnson City, for appellants.

Simmonds & Bowman and Cox, Taylor & Epps, all of Johnson City, and Geo. F. Dugger, of Elizabethton, for appellees.

Mr. Justice Chambliss delivered the opinion of the Court.

This suit was brought in June, 1932, by bondholders to enforce collection of bonds of the municipality which were in default in the payment of interest. No individual property owners were originally sued. But a petition was later filed by a bondholders' committee representing other holders of bonds in a large sum and by this petition the American Glanzstoff Corporation and certain other property owners were brought before the court. It was charged that abortive attempts had been made by (1) exemption resolutions of the city council and (2) by enactment of the Legislature changing the municipal corporate boundaries so as to exclude the properties of these owners therefrom, to relieve and ex-

empt the said properties from liability for municipal taxes; that the value of these properties so sought to be exempted was large and the loss of this revenue seriously impaired the ability of the municipality to meet its obligation and reduced, particularly, the security of its bondholders. It was also charged and established that city revenues allocated by law to servicing this bonded debt had been diverted, and by interlocutory decrees these special funds were ordered paid to a commissioner of the court and so impounded pending the final hearing.

In the spring of 1935 an agreement was entered into between the City of Elizabethton and its bondholders for a settlement which called for the issuance of refunding thirty-year bonds at a graduated rate of interest, ranging from 3 per cent. to 5½ per cent., these new bonds to be issued to the holders of the outstanding bonds dollar for dollar of principal, and accrued interest to be satisfied by a *pro rata* distribution of the funds accumulated in the hands of the commissioner and such other funds as might be collected from past-due taxes. This agreement was approved and confirmed by court decree in May, 1935, and all issues between the bondholders and city were thus concluded.

However, pending the litigation, the bondholders, as before indicated, had sought to subject the properties of the American Glanzstoff Corporation, which had been omitted from taxation by the city, to back assessment; and, by an amendment, prayed and allowed by the chancellor at a late date, the bondholders had sought a declaration of liability of these properties to taxation for the future for the security of the refunding issue.

In entering into the agreement of settlement, the bondholders, on the one hand, sought to reserve their alleged

rights against the American Glanzstoff Corporation, and the corporation, on the other hand, sought to continue to prosecute their attack upon the validity of the bonds on various grounds, and excepted to the decree of settlement.

In November, 1935, a final decree was entered by the chancellor adjudicating the various questions and determining all issues between the parties. From his decree, the bondholders and the Glanzstoff Corporation both appealed. Numerous assignments of error and voluminous briefs and arguments have been presented. Without elaboration of the various questions thus raised and discussed, after careful consideration an analysis indicates that the material determinative issues necessary to be here and now passed on are two, arising (1) on the appeal of the bondholders from so much of the decree below as denied to them the right to enforce tax charges against the American Glanzstoff Corporation for back years in satisfaction of the balance of accrued interest on their old bonds not fully paid from the fund collected by the special commissioner above mentioned; and (2) on the appeal of the American Glanzstoff Corporation from so much of the decree as undertook to declare its properties, lying beyong the city limits since 1929, taxable by the municipality in future, as an added security and protection to the refunding bonds.

Conceiving, as we do, that the many and varied questions argued relate, in the last analysis, to one or the other of these main issues, we proceed to a consideration of these issues and these only.

Much of the fact background of the controversy herein touching the liability of the Glanzstoff Corporation for county and municipal taxation is set forth in the opinion

of Chief Justice GREEN in the case of *State ex rel. Allen* v. *American Glanzstoff Corporation*, 167 Tenn., 597, 72 S. W. (2d), 775.

In the very exhaustive opinion filed by the chancellor he has dealt elaborately with these facts. We quote at length therefrom. At one point he says:

"It is the insistence of the Glanzstoff Corporation that in the early part of 1927, through its representatives, it was casting about for a suitable location for a plant for the manufacture of artificial silk, which it was estimated would cost, including equipment, not less than $5,000,000.00, and employ not less than 2,000 employees. And it is insisted that said plant was procured to be located at Elizabethton on condition and upon assurance that the property would be exempted from taxation for the period of ten years. In this connection it is shown that the Chambers of Commerce of Elizabethton and Johnson City, as an inducement to have said plant locate in Carter County, contributed in excess of $100,000 for the purchase of a plant site, and, in addition, pledged said Chambers of Commerce to cause the necessary legislation to be passed at the next ensuing session of the State Legislature to exclude the lands acquired, or to be acquired, for a plant site from the corporate limits of Elizabethton and also to cause the necessary steps to be taken by Carter County and by the City of Elizabethton to exempt said properties from taxation for the period of ten years.

"As a matter of fact, said Chambers of Commerce of Elizabethton and Johnson City complied with their agreements. The County Court of Carter County passed a resolution exempting said properties from taxation for the period of ten years. And the City Council of

Elizabethton, on May 7, 1927, passed a similar resolution. And at the next session of the Legislature [1929] there was caused to be passed an Act [Priv. Acts 1929, c. 1212, sec. 11] excluding the plant site from the corporate limits.''

In another place he says:

''It is undoubtedly true that the action taken by the Chambers of Commerce of Elizabethton and Johnson City, and the subsequent action of the City Council of Elizabethton, and by the County Court of Carter County, undertaking to exempt said properties from taxation, was used as an inducement to have said plant located in Carter County; and the record shows that the inducement, so held out to the promoters of this enterprise, constituted a primary consideration for the location of the plant.

''Prior to the 1927 session of the State Legislature the plant site of the Glanzstoff Corporation was without the corporate limits of Elizabethton. Up to that time this property was hardly more than ordinary farm lands, but, at that time, due to the location of the American Bemberg Corporation plant close by, Elizabethton was expanding, and the corporate limits were enlarged, and this property was made a part of the City by Act of the Legislature on April 8, 1927. The property was excluded from the corporate limits by act of the Legislature on April 5, 1929, and the plant site was therefore within the corporate limits for only about two years.

''There is no reason for believing that the action taken by the Chambers of Commerce was not in good faith, nor that the action taken by Elizabethton was not in good faith. As the situation now is, Elizabethton has not sought to repudiate its agreement.''

In another place he said:

"Reference has hereinbefore been made to the equities growing out of the peculiar facts and circumstances of the case in favor of the Glanzstoff Corporation. . . . Undoubtedly Elizabethton, in its own right, would be placed in an awkward position by insisting that The Glanzstoff Corporation be assessed for taxes. Such a position would be contrary to the agreement which the City entered into not to assess the property; it would set at naught the assurance given by citizens and taxpayers of Elizabethton, that the property would be excluded from the corporate limits and thereby relieved of taxes; and apparently it would run counter to the wishes of those who made themselves active in securing this enterprise for Elizabethton and Carter County. It is reasonable to assume that the plant would not have been located at this exact location but for the belief that the measures which were adopted would be effective to relieve the property from the taxes. It is very probably true that the location was influenced by its proximity to the site of the American Bemberg Corporation plant, an allied industry, without which it might just as well have been located entirely outside the corporate limits. And while, in the circumstances, there is the strongest sort of an appeal for giving effect to the general rule that by the exclusion of the property as a part of the corporate boundaries of Elizabethton, it was thereby relieved from the obligation to respond in taxes; yet, because of the intervention of bondholders and the right accruing to them as such, the Court feels constrained to hold, for the reasons hereinbefore indicated, that the Glanzstoff Corporation became liable and subject to be taxed, and that relief may not be granted further than as herein indicated."

As before stated, the bondholders were seeking (1) a decree holding the Glanzstoff Corporation liable for back assessment for the payment of their claim for accrued interest on the old bonds, and (2) a declaration of future liability for the security of their refunding bonds. The first relief was denied by the chancellor, the second granted.

In disposing of the first of these issues adversely to the bondholders, the chancellor said:

"Complainants pray for a decree against the City for past due bonds, and for the past due coupons, and for a decree adjudging liability against the Glanzstoff Corporation, for what years liable, etc., and that its property be back-assessed for such period as may be allowed; and they pray, in the alternative, for a declaratory decree, declaring their rights present and future as bondholders as against the American Glanzstoff Corporation.

"The agreement between the parties, and the decree of May 25, 1935, provides for refunding all outstanding bonds and interest thereon, as of July 1, 1935. It provides for a decree in favor of each bondholder for the face value of his bonds, plus interest, and for the satisfaction in full of the decree by the City issuing and delivering refunding bonds, as of July 1, 1935, in the principal amount due, as of that date; it provides for the satisfaction thereof by the payment in *pro rata* to each bondholder the funds collected or to be collected, and in the hands of the Commissioner of the Court, less costs and expenses.

"The agreement just referred to, after providing for the manner of satisfaction, undertakes to reserve the right to prosecute the claims of bondholders in these words:

" 'Without prejudice nevertheless to the Committee's and the bondholders' rights hereby expressly reserved to prosecute the claims now in litigation against certain taxpayers claiming to be exempt, to the point of final judgment or compromise.'

"The decree on this subject provides as follows:

" 'Fourth: It is further ordered, adjudged and decreed that the refunding bonds herein provided for shall bear date of July 1, 1935, and shall be the general obligations of the City of Elizabethton, and in addition there is by this decree especially reserved to the future holders of said refunding bonds, all the rights and liens that the holders of the present outstanding bonds now have against the city or against any property of taxpayers thereof by reason of front foot assessment liens, liens for unpaid assessments of every kind, and liens for back assessments that may be made, for failure to assess for any years past or future. And especially is there reserved for holders of refunding bonds all rights of the present bondholders against the unassessed so-called farm lands within the corporate limits of the City and against the plant and property of the Glanzstoff corporation involved in this suit. This refunding is not intended to be and shall not be a novation of the debt refunded, but is and is intended to be a mere extension thereof reserving all rights against all parties now liable in any manner.'

"It will be noticed that there was attempted to be reserved for holders of refunding bonds front foot assessment liens, all rights against unassessed so-called farm lands, and against the Glanzstoff Corporation.

"It is the view of the Court, under the peculiar facts of this case, that this reservation may be given effect

only insofar as may be required for the security of the refunding bonds and interest as provided by this decree. The accrued interest was the subject of compromise and adjustment between the bondholders, and the City. It was recited in the agreement that there was outstanding and unpaid, as of August 31, 1934, an interest item of $308,057.50, against which there was available in the registry of the Court, $115,098.18, or a difference of $193,000.00, which the City was unable to pay and which together with interest to accrue to July 1, 1935, it was agreed to settle, by the payment of the funds in Court and further funds to come into the hands of the Special Commissioner, all told, estimated at around $160,000.00. The bondholders recognized the inability of the City to pay outstanding bonds and interest from 'sources of revenue available to the City,' and the necessity for an adjustment 'based on the City's capacity to pay.' There resulted a compromise and settlement as of July 1, 1935, to which date all accrued interest was to be calculated and settled in full by the payment to all bondholders in proportion to their holdings the funds, in the hands or to come into the hands of the Special Commissioner. Having made fair compromise with the City as to this accrued interest, the bondholders are in no position, in the name and right of the City, to make further demand on individual taxpayers.

''At the time of the agreement between the bondholders and the City the bondholders were fully aware of the agrement which the City had entered into to exempt the Glanzstoff Corporation from taxes for the period of ten years. They knew the attitude of Elizabethton to keep faith with this corporation. They knew Elizabethton had refused and continued to refuse to assess this property.

Whether they knew it before or not they became aware of all the facts surrounding the exemption of the plant site from taxation. They learned of the interest which the public had taken in the matter. They learned of the agreement to have the property excluded from the corporate limits; of the subsequent Act of the Legislature excluding the plant; and of all other considerations affecting the situation, and with such knowledge they entered into the agreement and compromised the accrued interest, and in all good conscience they should not insist on the City enforcing a technical claim against the Glanzstoff Corporation, and on the City taking a position which from its viewpoint would be an act of bad faith.

"Manifestly, it cannot be said that the failure of Elizabethton to collect taxes from the Glanzstoff Corporation was solely responsible for the City's defaults. Several factors entered into that situation. The chief thing was a nation-wide economic condition. There resulted scores and scores of taxpayers falling behind and failing entirely to pay their taxes. Elizabethton was not alone in the plight of a distressed taxpayer. Had all delinquent taxes been paid it is very probable all accrued interest would have been paid. It would seem that there must be a considerable item of delinquent taxes, represented by that portion of the levy made for debt service which is properly applicable to delinquent interest, and it is noted that no provision is made for applying such taxes as collected to accrued interest, but the effect is to back assess the Glanzstoff Corporation, and let it go at that. In fact the agreement provides that the proceeds of levies for prior years, shall be applied to make up any deficiency, if such there be, for the redemption of

refunding bonds. It is not quite apparent how that could be done, or rather how the Glanzstoff Corporation could be back assessed without first showing the necessity therefor after due application of the levies already made.

"The reservation against Glanzstoff Corporation does not in direct terms refer to accrued interest, or to any deficiency of accrued interest above the amount agreed to accept in settlement, and there is scarcely a doubt that the predominant idea in the mind of the draftsman of the reservation was to reserve the question and have decreed against the Glanzstoff Corporation the question of its liability as a taxpayer as regards the refunding bonds and the interest to accrue thereon. In the circumstances disclosed by the record there is no reason for applying any rule of liberality of construction to this reservation clause in order to embrace within its meaning the right to back assess the Glanzstoff Corporation; but the equities of the situation rather suggest a strict construction, which operates to exclude any right to back assess said corporation."

Commenting on this part of the chancellor's opinion, counsel for Glanzstoff Corporation say:

"The Chancellor points out that all accrued interest was settled in full by the funds 'in the hands of the Special Commissioner'; that there must be a considerable item of delinquent taxes due and that no provision is made for applying such taxes to accrued interest; that in fact the levies for prior years shall go to make up any deficiency, if such there be, for the redemption of the refunding bonds and that appellant could not be back assessed, *without first showing the necessity therefor after due application of the levies already made.*'

"Appellees argue that the proceeds from back assessments would come to them under the compromise agreement as funds 'which may hereafter come into the hands of the officers of said City,' or which 'were hereafter to come into the Commissioner's hands' (Brief, p. 21), but these provisions in the refunding contract, and decree approving same, had reference, not to proceeds from back assessments, but to moneys that were to be collected from taxes from other property from the date of the compromise agreement, effective March 20, 1935, when the cause was tried, to the date of the refunding bonds, July 1, 1935, as shown by appellees' own construction of said agreement and decree on pages 12 and 13 of their brief. No part of the proceeds from contemplated back assessments were, under any condition, to go to the appellees, and in deciding the case the Chancellor invoked the holding of this Honorable Court in the case of *State ex rel. Allen* v. *American Glanzstoff Corporation*, 167 Tenn., 597, 72 S. W. (2d), 775.

"In other words, the proceeds from such levies could not benefit appellees and they are not in a position to insist thereon, and a court of equity will not aid them in their efforts to compel the City to back assess appellant when such back assessment would be an act of bad faith."

We find ourselves in accord with these views and conclusions of the chancellor touching the right to have the properties of the Glanzstoff Corporation back assessed. There are other debatable reasons why liability may not be adjudged in this proceeding against the Glanzstoff Corporation for back assessment, but we find it sufficient to say, with the chancellor, that the reservations in the decree relied on by the bondholders do not convincingly refer to this right, but rather (1) to previously

assessed and uncollected tax claims of various kinds, and (2) to the right to prosecute their prayer for a declaratory decree as to the future as holders of the refunding bonds.

Now this latter prayer the chancellor granted, and it is of this that the Glanzstoff Company here complains. It is plausibly urged that the learned chancellor has granted this discretionary relief under the declaratory judgment law (*Harrell* v. *American Home Mortg. Co.*, 162 Tenn., 371, 36 S. W. (2d), 888) in disregard of the very equities which he has in the same opinion strongly stressed.

■ While this court is committed to a liberal interpretation of the Declaratory Judgments Act (Code 1932, sec. 8835, et seq.), there are limitations which have been clearly set. As said in *Miller* v. *Miller*, 149 Tenn., 463, 261 S. W., 965, "the question must be real, and not theoretical; the person raising it must have a real interest," etc. And, in *General Securities Co.* v. *Williams*, 161 Tenn., 50, 53, 29 S. W. (2d), 662, 663, it was said, "In order to obtain a declaration as to future rights of parties involved, a *bona fide* controversy must *exist*, some real interest of the parties must *be* in dispute." We italicize the words of present tense. The dispute, the controversy may not be one that may or not arise in days to come. Consistently therewith it was said in *Hodges* v. *Hamblen County*, 152 Tenn., 395, 277 S. W., 901, 902, that "the statute does not contemplate declarations upon remote contingencies"; and, again, "a declaration should not be made on an abstract question," that is, one not having a practical relation to a pending controversy; and, again, "nor on remote and incidental questions." And, as in the Hodges Case, we have here a question

which may never arise and, as said in that case, "if it ever does arise, the particular parties now before the court may have no interest whatever." For example, the bonds may be in wholly different hands, conceivably in the hands of holders who, in recognition of equities or for other reasons, such, for example, as the expense and uncertainty of the litigation, or its then apparent needlessness or fruitlessness under then conditions, may not desire to press such a demand. Changes may take place in the status of the Glanzstoff Corporation which would render the right sought to be declared ineffectual and valueless. Harassed and aggrieved by such demands, or embarrassed by labor or other troubles, operations may be suspended and the plant abandoned or removed. In the chaotic course of, events ahead of us, forces social and political may bring about kaleidoscopic changes which would render the declaratory decree, here and now sought wholly valueless. Legislative enactments supported by changed constitutional authority may intervene.

And the decree sought would be premature for the reason that there is now no default and certainly until there is default, if ever, the bondholders and creditors have no right to direct the city as to the details of its assessments or tax policy, the persons or property it will subject. There is no present indication of default and no apparent reason why the City of Elizabethton should not meet the service charges called for by this issue of bonds. It totals $1,600,000, in round figures. The interest rate at present is 3 per cent. (The average over thirty years approximately 4 per cent.) The city's assessment is approximately $8,000,000. A tax rate of $2 would yield, with other usual municipal sources of revenue, perhaps

four times the requirement for this purpose. The bonded interest charge is much larger than this, in proportion to revenue, in many of our prosperous cities. It is reasonable to anticipate growth for the city, with incidental increased values. The charge, made the basis of the prayer, that these bondholders will suffer loss unless this particular property is assessed along with that within the present corporate limits rests on a suppositious contingency only which may never arise.

And, finally, reference has been made to the recognized discretionary nature of declaratory decrees and to the equities involved. The views of. this court were clearly set forth in *State ex rel. Allen* v. *Glanzstoff Corporation, supra,* touching the equities surrounding this situation and this court's unwillingness was indicated to require by its decree the doing by the corporation of that which would be on its part "an act of bad faith." Certainly, the arm of equity should not be raised to strike down moral rights in enforcement of claims although having apparent legal support, until present and pressing exigencies demand action.

For the reasons indicated, without prejudice to the right of the bondholders to litigate in future the questions they now present, the prayer for a declaration is denied at this time and the decree of the chancellor thus modified is affirmed.