IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

_____

**RIVERBLUFF COOPERATIVE, INC.,
CHICKASAW BLUFF COOPERATIVE,
INC., KEVIN KANE, DAVID AND KAY
SOLOMON, T. J. AND EIGA ODEN,
DENNIS AND LANA SMITH, ULYS
AND JOAN WARD, JAY AND PAT
FERGUSON, STANTON BRYANT,
GEORGE T. LEWIS III, KEVIN AND
GAYLE GRAUER, LARRY AND JOYCE
HASSEL, PATRICK W. HALLORAN,
RICHARD J. RAINES, MARY PIPER
AND PETER STAMBROOK,**



**FILED**

**July 24, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

　　　　Plaintiffs-Appellants,

Vs.

**CITY OF MEMPHIS AND
MAYOR W. W. HERENTON,**

　　　　Defendants-Appellees,

and

**CHICKASAW BLUFFS CONSERVANCY, INC.,**

　　　　Intervening Appellee-Defendant.

C.A. No. 02A01-9805-CH-00128
Shelby Chancery No. 110123-1

_____

From the Chancery Court of Shelby County at Memphis.
**Honorable W. Michael Maloan, Chancellor**

**Cannon F. Allen**, Memphis, Tennessee
**Sara Falkinham**, Memphis, Tennessee
Attorneys for Plaintiffs/Appellants.

**Ken McCown**, Deputy City Attorney, Memphis, Tennessee
Attorney for Defendants/Appellees City of Memphis and Mayor W. W. Herenton.

**Edward M. Bearman**, BRANSON & BEARMAN, Memphis, Tennessee
**Reva M. Kriegel**, DONATI & ASSOCIATES, Memphis, Tennessee
Attorneys for Intervening Defendant/Appellee Chickasaw Bluffs Conservancy.

OPINION FILED:

**AFFIRMED IN PART AND REMANDED**

**PER CURIAM**

This appeal involves a dispute concerning the construction of a pedestrian walkway along

the top of the Fourth Chickasaw Bluff overlooking the Mississippi River on the east side of

Riverside Drive between Union Avenue and Calhoun Street in downtown Memphis. This is the second controversy concerning the walkway to reach this Court. Previously the Court considered an appeal by the Memphis mayor from the chancery court order requiring him to execute the construction contract for the walkway. *Chickasaw Bluffs Conservancy, et al v. The City of Memphis, et al*, C.A. No. 02A01-9607-CH-00169 (Tenn. App. Mar. 25, 1997). The pertinent facts established in *Chickasaw Bluff Conservancy* set out in this Court's opinion, as amplified by the record in this case, provide a helpful history of the events leading to the present controversy.

The walkway is the centerpiece of a five mile sidewalk system linking riverfront parks, historic sights, cultural centers and commercial and residential developments in Memphis. A walkway system has been projected since the late 1960's, and with the advent of various urban renewal projects in downtown Memphis in the 1980's, efforts to build a walkway escalated.

In 1982, the Center City and Riverfront Public Spaces Plan recommended that a walkway be built into the face of the bluff. This and subsequent plans ignited controversy between public and private interests. After several years, the competing interests reached a compromise permitting construction of the walkway along the face of the bluff west of the properties owned by the Riverbluff and Chickasaw Bluff Cooperatives. The compromise, which called for the walkway to be built along the top of the bluff, was incorporated into the terms and conditions of the "South Bluffs Planned Development, P.D. 89-319."

In the spring of 1992, the South Bluffs developer requested a land use change, changing the zoning of the area from commercial to mixed residential and commercial use. The developer's proposal called for the construction of nine single family residences along the crest of the bluff and eliminated the walkway he was required to build under P.D. 89-319. Ultimately, the City, the Chickasaw Bluffs Conservancy and the South Bluffs developer reached a compromise which permitted the construction of nine homes along the crest of the bluff and proposed that the walkway be cut into the face of the bluff eight feet below the crest. That compromise was incorporated into the City Council's resolution of December 8, 1992, approving the amendment conditioned upon construction of the walkway as described. While the compromise relieved the developer from his obligation to build the walkway, it obligated him to provide financial security and to build connectors to the walkway across his property at

2

Calhoun and Butler Streets.

Engineering reports obtained by both the City and the South Bluffs developer indicated that construction of a walkway cut or "notched" into the bluff would not destabilize the bluff. The amended planned development was designated P.D. 91-330, and it obligated the City to build the entire walkway into the face of the bluff approximately eight feet below the crest, and it obligated the developer to construct connectors to the walk at Calhoun and Butler Streets. In addition, the City Council required the developer to notify prospective purchasers of homes atop the bluff regarding construction of the walkway.

The City Council entertained a motion to reconsider the December 8, 1992, resolution amending the South Bluffs Planned Development and placed the reconsideration of the resolution on the City Council's agenda for January 5, 1993. At the January 5, 1993, City Council meeting, the South Bluffs developer introduced a letter from professional engineers and contractors that opined that no adverse effects would be sustained to the bluff by construction of the walkway if prudent engineering practices were followed. After hearing comments from the public and receiving the testimony of professional engineers that cutting into the bluff would not undermine its stability, the City Council approved the amended Planned Development, designated as P.D. 91-330. The City Council's January 5, 1993, resolution stated:

> **WHEREAS**, Section 14 of the Zoning Ordinance-Regulations of the City of Memphis and Shelby County, being a section of the Joint Ordinance-Resolution No. 3064, dated October 7, 1980, authorizes the Council of the City of Memphis to grant a planned development for certain stated purposes in the various zoning districts; and,
>
> **WHEREAS**, The Memphis City Council on July 25, 1989, approved the application of South Bluffs Development Associates (P.D. 89-319) for a planned development located at the northwest corner of West Georgia Avenue and Tennessee Street; and
>
> **WHEREAS**, The Memphis City Council on July 21, 1992, approved the application of South Bluffs Development Associates (P.D. 91-330) amending Area A of the planned development to permit predominantly low density residential development; and
>
> **WHEREAS**, The Council of the City of Memphis received the recommendation of the Land Use Control Board, the report and recommendation of the Office of Planning and Development regarding the proposed planned development; and
>
> **WHEREAS**, The Council of the City of Memphis held a public hearing on the planned development, received and considered the presentations of all parties concerned with the proposed

3

development; and,

**WHEREAS**, The Council of the City of Memphis resolved that the bluff walkway feature should be located at the crest of the river bluff in Area A and that the specific design should be subject to site plan review; and,

**WHEREAS**, South Bluffs Associates has filed a site plan for development of Area A which provides for a modified location of the bluff walkway recessed at the crest of the bluff and has proposed a specific design for constructing the walkway at that location; and,

**WHEREAS**, The City Council has received a presentation of the Area A site plan including the revised location and specific design plan for the bluff walkway;

**NOW, THEREFORE BE IT RESOLVED** By the Council of the City of Memphis that the site plan proposed by South Bluffs Associates including the revised location of the bluff walkway is hereby approved subject to the attached conditions.

**BE IT FURTHER RESOLVED** That the approved site plan shall be deemed to be in compliance with the requirements of said aforementioned section of the Zoning Ordinance-Regulations as well as the approved outline plan.

\*                    \*                    \*

Conditions:

8.  The Bluffwalk shall begin at a point where Butler Avenue intersects with the northwest corner of Area A and shall continue along the bluff past the southwest corner of the proposed Cornerstone Inn and shall connect with the northern terminus of the existing Bluffwalk easement located at the west end of Calhoun Avenue as reflected on the final plat for Phase One of P. D. 89-319. Turley shall construct adequate access to the Bluffwalk at or around Butler Avenue and at or around the south property line of the proposed Cornerstone Inn.

The final plat for P.D. 91-330, approved on April 6, 1993, shows the walkway on city property with connectors and easements through the South Bluffs development.

In 1994 and 1995, the City undertook feasibility studies to determine the best walkway design. In June, 1994, the City contracted with J. Ritchie Smith Associates, a landscape architecture firm, to prepare a design and feasibility study for the walkway. Also in the summer of 1994, the Mayor appointed a Riverbluff Walkway Review Committee to evaluate the proposals developed by J. Ritchie Smith Associates. The landscape architect submitted three proposals which included (1) an elevated boardwalk, (2) a precast concrete sidewalk notched into the bluff and (3) a cast-in-place concrete sidewalk and retaining wall notched into the bluff and stabilized by soldier piles. Engineering reports indicated that construction of an elevated

boardwalk would be the least intrusive. The City conducted hearings and public forums at which the City's consulting team made presentations to the public on the results of their feasibility study and design recommendations. Many residents of the South Bluffs development and the Chickasaw and Riverbluff Cooperatives attended. At these meetings, the residents voiced their concerns and opposition to construction of the walkway and to its elevated design.

Ultimately, the City and the consulting team reached a consensus, calling for the construction of a cast-in-place concrete sidewalk and retaining wall notched into the bluff with the addition of soldier piles to be installed at close intervals in the land above the notch in order to provide continuous support for the soil both during and after construction. On February 21, 1995, the City Council held another public hearing on the appropriation of funds for the walkway at which the various design alternatives and stability issues were reviewed. The City Council heard testimony from the consultants and from City Engineer James Collins that neither the elevated boardwalk nor the notched walkway, if constructed properly, would destabilize the bluff. Thereafter, the City Council appropriated over $1 Million in federal funds it already had received for the project and appropriated additional local funds in excess of $500,000 for construction.

In 1995, final designs were prepared with the consultation of the City's engineers. On August 29, 1995, the Riverbluff Walkway Review Committee approved the design and construction plan. The project was put out for bid, and Chris-Hill Construction Company was awarded the contract. A contract was prepared and executed by City officials, but on February 20, 1996, the Mayor advised the City Council that he would not sign the contract. In March, 1996, the Conservancy filed suit in the Shelby County Chancery Court against the Mayor seeking a writ of mandamus to compel his execution of the contract pursuant to P.D. 91-330. Ultimately in March, 1998, this Court affirmed the Chancery Court's judgment finding that the Conservancy was entitled to a writ of mandamus requiring the mayor to proceed with construction of the walkway pursuant to P.D. 91-330 and its incident resolutions.

The contract was rebid, and Grinder Brothers Construction Company was awarded the contract in June, 1997. On September 2, 1997, the City Council passed a resolution providing additional funding for the construction contract, and on September 30, 1997, the notice to proceed was issued to the contractor. The City Council also authorized creation of a new design

review committee comprised of bluff residents and walkway supporters. This committee met four times in September and October, 1997, and recommended landscaping and security enhancements to the project.

On October 27, 1997, the plaintiffs, residents of the Riverbluff and Chickasaw Bluffs Cooperatives, filed the instant lawsuit against the City to enjoin construction of the notched sections of the walkway under the approved plans and specifications. The plaintiffs allege that notching the bluff would have a catastrophic effect on their homes and property because the bluff is comprised of loess soil, a silty, windblown soil that destabilizes when saturated with water. The plaintiffs assert that notching the bluff and building the walkway would result in a nuisance and remove the lateral and subadjacent support from their property, thus increasing the potential for landslides, and leaving them with no adequate remedy at law. Also, the plaintiffs allege that the walkway, as proposed, does not comply with the City Council resolutions and the final plat of P.D. 91-330. They sought monetary damages as well as injunctive relief.

On March 12, 1998, the trial court granted the motion to intervene filed by the Conservancy. On May 6, 1998, the trial court granted the defendants' motion for summary judgment on the plaintiffs' claims for injunctive relief as to nuisance and the loss of lateral support. In granting the motion for summary judgment, the trial court determined that immediate and irreparable harm was not established under the injunction requirements of Rule 65 Tenn.R.Civ.P. That judgment was made final under Rule 54.02 Tenn.R.Civ.P., and the notice of appeal was filed the same date. The trial court later granted the defendants' motion for summary judgment as to the third count regarding the project's compliance with P.D. 91-330 and its incident resolutions. That order has not been appealed and is not an issue before the Court. The claim for money damages is still pending.

On May 7, 1998, the plaintiffs filed in this Court a motion for stay of construction pending appeal, which the Court remanded to the trial court by Order entered May 19, 1998. The trial court denied the stay. Construction on the project began on June 1, 1998. On June 4, 1998, the plaintiffs filed a renewed motion for a stay of construction pending appeal. On June 17, 1998, the Court granted the plaintiffs' motion to stay construction along the north notch and the south notch of the bluff until September 1, 1998, conditioned on plaintiffs posting the bond set by the trial court. The Court's order expressly permitted further construction to proceed in

the areas not included in this proceeding and permitted the parties to undertake "wind-up and stabilization" procedures to the bluff. The June 17 order also permitted an expedited appellate schedule culminating in oral argument before this Court on July 7, 1998. Plaintiffs did not post the bond and the trial court's judgment was not stayed.

Plaintiffs' issues for review, as set out in their brief, are:

> I. Whether the trial court erred in granting summary judgment on plaintiff's claim for injunctive relief for lateral support on the basis that the plaintiffs could not establish immediate and irreparable harm under Rule 65 Tenn.R.Civ.P., and, alternatively, whether genuine issues of material fact existed as to these issues warranting a trial on the merits.

> II. Whether the trial court erred in granting summary judgment on plaintiffs' claim for injunctive relief for lateral support on the basis that plaintiffs had an adequate remedy at law.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56.03 Tenn.R.Civ.P.; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist. *Byrd*, 847 S.W.2d at 210. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. (Citations omitted). In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211. (Emphasis in original).

The order granting defendants' summary judgment incorporates the judge's ruling from the bench at the conclusion of the summary judgment hearing. The judgment states as pertinent:

> In this case the risk or imminency and certainty of injury is a matter of dispute among the various experts which the Court has the benefit of by affidavit and deposition.

> The issue is whether the likelihood of harm reach such a degree of certainty that an injunction should issue to prevent the enactment of PD 91-330.

> After considering all of the legal requirements of this case, the Court is of the opinion that summary judgment should issue in favor of the defendant.

7

The proof fails to establish the immediate and irreparable injury requirements of Rule 65. Plaintiffs have an adequate remedy at law, that of damages.

The plaintiffs have failed to also prove that there's an issue, per se, that the activity of defendants would be imminent and certain to occur and entitle them to prospective relief.

Although the trial court appears to premise its decision, at least in part, on the failure of plaintiffs to show immediate and irreparable damages, from the record before us, it appears there is a genuine dispute of material fact on that issue.

The construction of the walk between Butler on the north and Calhoun on the south is authorized as part of Memphis Ordinance P.D. 91-330. We find nothing in the record pertaining to legislation authorizing construction of the walk north of Butler. We will first deal with the case as it pertains to the construction pursuant to P.D. 91-330. In *Chickasaw Bluffs Conservancy,* this Court found:

Under the terms and conditions of the planned development ordinance, PD-91-330, the Developer is obligated to construct access to the notched bluff walk. By the same token, the Developer agreed to this obligation only on the condition that the City complete the remainder of the subject bluff walk. The City's commitment to do so became a part of the terms and conditions of the planning ordinance. The Mayor is obligated to perform as necessary to carry out the complete terms of the ordinance, and, therefore, is obligated to proceed with the construction of the walk and to require the Developer to provide the access to the walk.

*Id.* at 15.

Actions taken by city councils may be either legislative or administrative, and the threshold question is whether the council exercised its legislative or administrative authority. The term "administrative" is often used interchangeably with judicial or quasi-judicial. *Fallin v. Knox County Bd. of Commissioners*, 656 S.W.2d 338 (Tenn. 1983). The City Council's approval of the resolution mandating construction of that part of the walkway was done pursuant to its administrative authority and the plans for construction of the walkway were promulgated pursuant to an existing zoning ordinance for a planned development. *Chickasaw Bluffs Conservancy et al. v. City of Memphis, et al.*, No. 02A01-9607-CH-00169 (Tenn. App. March 25, 1997) p. 13.

Citizens generally cannot maintain a suit to restrain an action by municipal authorities unless they are acting illegally and the effect of the illegal action occasions a specific injury not

8

common with an injury to the citizens as a whole. *State v. American Glanszstoff Corporation*, 167 Tenn. 597, 72 S.W.2d 775 (1934); *Reams v. Board of Mayor and Aldermen*, 155 Tenn. 222 (1927). Thus, two prongs are required to maintain a suit such as the instant case. As to P.D. 91-330, plaintiffs satisfied the second prong by their special interest. However, the record does not indicate that plaintiffs have satisfied the first prong. The complaint does not allege, nor is there any proof in the record that P.D. 91-330 is illegal or otherwise arbitrary and capricious legislation.

Both legislative and administrative decisions are presumed to be valid, and a heavy burden of proof rests upon the shoulders of the party who challenges the action. *McCallen v. City of Memphis*, 786 S.W.2d 633, 641 (Tenn. 1990). When reviewing administrative acts, the Court must determine whether the action of the city council was illegal or in excess of jurisdiction. *McCallen* at 641. If the exercise of authority by the governmental body can be classified as illegal, arbitrary or capricious, courts have routinely provided relief. Abuse of discretion, arbitrariness, capriciousness and unreasonableness are terms often used interchangeably. *Hoover Motor Exp. Co., Inc. v. Railroad and Public Utilities Commission*, 261 S.W.2d 233, 238 (Tenn. 1953). However, the Court must refrain from substituting its judgment for that of the local governmental body. An act will be invalidated only when the decision is clearly illegal, arbitrary or capricious. *McCallen* at 642.

Under the "illegal, arbitrary or capricious" standard of review for administrative acts, it is evident that the circumstances of this case do not warrant the invalidation of the act of the Memphis City Council. Plaintiffs have not alleged that the City Council's resolutions were illegal, and there has been no proof introduced to suggest that. Implicit in the prior *Chickasaw Bluffs Conservancy* opinion was the finding that P.D. 91-330 and its incident resolutions were legal and valid. Furthermore, we decline to find that the ordinance and resolutions are arbitrary or capricious. Given the long history of attempts to develop the bluff dating to 1982, the numerous engineering studies performed by the City and the developer, and the public hearings, agreements and compromises reached along the way, it can hardly be said that the ordinance and incident resolutions are in any way arbitrary or capricious. There is clearly material evidence to support the actions of the City Council. *See, Laidlaw Environmental Servs. Of Nashville, Inc. v. Metro. Board of Health,* 934 S.W.2d 40, 49 (Tenn. App. 1996); *Sexton v. Anderson*

*County*, 587 S.W.2d 663, 666 (Tenn. App. 1979).

Therefore, we affirm the trial court's order granting defendants' summary judgment insofar as it pertains to the construction authorized by P.D. 91-330 for the reasons set out in this opinion. This Court may affirm a decree correct in result but rendered upon different, incomplete, or erroneous grounds. *Hopkins v. Hopkins*, 572 S.W.2d 639 (Tenn. 1978); *Duck v. Howell*, 729 S.W.2d 110 (Tenn. App. 1986).

As we heretofore noted, however, the record is silent concerning legislative authority for walkway construction north of Butler. Since such authority is essential for action on the part of the City, it would appear that the record may be incomplete. In any event, the existence of such legislative authority should be determined in order to consider the merits of the appeal as to the walkway construction not included in P.D. 91-330.

In sum, the order of the trial court granting summary judgment is affirmed as to that part of the construction included in Memphis City Ordinance P.D. 91-330. The case is remanded to the trial court for further proceedings concerning the construction of the walkway north of Butler, consistent with this opinion. Costs of the appeal are assessed one-half to plaintiffs and one-half to defendants.

**PER CURIAM**