# WOODROOF v. CITY OF NASHVILLE et al.—197 S. W. (2d) 4.

Middle Section. June 29, 1946.

Petition for Certiorari denied by Supreme Court, October 4, 1946.

Andrew D. Tanner, of Nashville, for Nashville Fire Fighter's Ass'n.

Claude Callicott, of Nashville, for appellants City of Nashville and others.

Elvin Woodroof and Stockell, Edwards & Finney, all of Nashville, for appellee.

HICKERSON, J. Alfred R. Woodroof filed this petition for certiorari in the chancery court of Davidson County pursuant to the provisions of Code Sections 9008-

9018 seeking to review and reverse an order of the Civil Service Commission of the City of Nashville denying him a pension. The theory of complainant's suit is that he was employed as a fireman by the City of Nashville. Injuries were received by him in line of duty, without fault on his part, which permanently incapacitated him from active service in his position. All requirements had been met by him for a pension, and application was made therefor. The application was denied on the ground that the City of Nashville had offered him the position of fire alarm operator in the Fire Department of the city, and complainant was physically able to do the work of a fire alarm operator. Complainant accepted the proffered job, under protest, because it was lower in rank and paid less salary than his regular position of fireman.

Certain members of the Nashville Fire Fighter's Association, Local No. 783, of International Association of Fire Fighters, in their own behalf and in behalf of all other members, filed an intervening petition in the cause in which they adopted all the allegations of the original petition, alleged the members of the association would be affected by a decision in the case, and prayed: "That the relief prayed for in the original bill be granted and an adjudication of complainant's and petitioners' rights be had, under the provisions of the Declaratory Judgments Act, Section 8835 et seq. of the Code of Tennessee."

By answer the following defenses were made: (1) Defendants offered complainant the position of fire alarm operator which he was able to hold. (2) He would continue to receive the same salary he had received as a fireman and hold the same rank. (3) Defendants had a right, under the charter of the City of Nashville, to assign an employee, who was incapacitated by reason of injuries received in line of duty from performing the duties of his

regular position, to a position of a lower level which paid a lower salary and thereby defeat his pension; if the injuries of the employee did not prevent his performing the duties of the new position, and he was paid the salary which he received in his old position.

The chancellor reversed the order of the Civil Service Commission and awarded complainant a pension. Defendants appealed.

The facts are these: Complainant was a pipeman in the fire department of the City of Nashville. A pipeman and a ladderman are classified as firemen. His salary was $170 a month. He was injured in line of duty through no fault on his part. His injuries incapacitated him from performing the duties of a fireman. That incapacity is presumed to be permanent. Application was made for a pension. The chief of the fire department offered complainant the position of fire alarm operator in the fire department. This position paid $150 a month. He was able to perform the duties of fire alarm operator. Complainant accepted this position, under protest, and worked at it so as to avoid the charge of insubordination. His pension was denied by the Civil Service Commission. There was some evidence about other positions in the fire department which were of a higher level and paid more salary than the position of fireman. The chief of the fire department testified that complainant might be promoted to one of these positions, but such higher position was never offered him.

Complainant was paid his old salary of $170 a month while working as fire alarm operator.

The fire department of the City of Nashville is operated on a merit system, or civil service basis, and employees in this department are entitled to a pension of one-half their monthly salary when they meet the requirements set

forth in the charter relating to a pension. Certain reductions were made from complainant's salary as contribu-· tions to the pension fund from which claims are paid.

There is only one question for this court to determine: Is complainant entitled to a pension, under the charter of the City of Nashville, for injuries received in line of duty as a fireman with no fault on his part, when the City of Nashville offered him the position of fire alarm operator in the same department and agreed that his old salary would not be reduced?

It is necessary to construe the Private Acts of the General Assembly of Tennessee for 1943, ch. 47, as amended by Private Acts of 1943, ch. 272, and as further amended by the Private Acts of 1945, ch. 188. These Private Acts created the charter of the City of Nashville under which complainant bases his claim for a pension. The Acts have been edited into the Nashville City Charter by Michie City Publications Company, 1945. References in this opinion to the Nashville City Charter by sections will be to this book.

■ We approach an interpretation of the provisions of the Nashville City Charter which apply to the facts of this case, bearing in mind the rule laid down by our Supreme Court that: "Again, the statutes creating pensions are remedial in their nature and are to be liberally construed in favor of the applicants for pensions, as a matter of sound public policy." Collins v. City of Knoxville, 180 Tenn. 483, 176 S. W. (2d) 808, 811.

■ To ascertain the legislative intent, which is the cardinal rule of construction, effect must be given to each part of the statute, and to the statute as a whole, so as to accomplish the general purpose of the legislation. Shea v. Hoffman, 168 Tenn. 628, 80 S. W. (2d) 87; Board of Park Commissioners v. City of Nashville, 134 Tenn. 612,

185 S. W. 694. The involved sections of the Nashville City Charter are:

Section 150: "The Chief of the Fire Department is hereby given the power and authority, by and with the consent and approval of the Commissioner of Fire and Public Works, to make assignments of men, to transfer employees within the Department, to recommend promotions, and to designate and regulate the use of all equipment assigned to the Fire Department.

"The transfer of employees within the Department referred to above, is hereby expressly exempted from the Civil Service provisions of this Charter. However, no such transfer of employees within the Department shall operate so as to effect a reduction in salary or in rank. (Pvt. Acts 1943, c. 47, sec. 30; Pvt. Acts 1945, c. 188.)"

Section 260, part 6: " 'Class' or 'Class of Positions' means a group of positions in the municipal classified service sufficiently alike in duties, authority, and responsibilities that the same qualifications may reasonably be required for, and the same schedule of pay can be equitably applied to, all positions in the group."

Section 285: "An appointing authority may at any time assign an employee from one position to another position in the same class or level in his department. A transfer of an employee from a position in one department to a position of the same class or level in another department, or from a position in one class to a position in another class of the same level in the same department may be made with the approval of the Commission and of the appointing authorities involved and with the consent of the employees. Any change of an employee from a position in one class to a position in another class of a higher level shall be deemed a promotion and any change of an employee from a position in one class to a position

in a class of a lower level shall be considered a demotion. (Pvt. Acts 1943, c. 47, sec. 42-aa; Pvt. Acts 1945, c. 188.)"

Section 303: "All classified Civil Service employees as defined in Charter are eligible to all the benefits, subject to all the conditions, limitations and requirements of the pension provisions of this Article when satisfactory proof is furnished to the Civil Service Commission that such person has complied with the pension provisions herein, and—

. . . . . .

"2. Has served for five years and upon good cause shown, in the judgment and discretion of the Civil Service Commission, may no longer be able efficiently to discharge the duties of his or her position because of physical or mental defects or infirmities; but when any person has been pensioned because of physical or mental defects or infirmities, or because of supposed permanent injury, as provided in section 43-e (sec. 305 hereof) and the Civil Service Commission for any reason believes that such pensioner has recovered from such physical or mental defects or infirmities, or supposed permanent injury, and is able to resume active work and service, then said Civil Service Commission is authorized to make further investigation and to have the pensioner examined by the City Health Officer or other physician or surgeon appointed by it; and if in the opinion of said Commission after such further investigation, the pensioner is able to resume active work and service, his or her pension shall thereupon cease and the person shall be assigned to work, but the time such employee has been out of service and drawing a pension shall be counted as service, for the purpose of computing the period of twenty-five (25) years service, referred to in paragraph 1 of this section.

"Provided, however, where an employee has been granted a pension as hereinabove provided and thereafter recovers sufficiently to resume active work and service in a position which pays less salary than the position held when pensioned, and such person thereafter becomes unable to efficiently discharge the duties of such new or any subsequent position and is pensioned by reason thereof, such person shall be entitled to receive the pension originally granted.

"Any person who has thus been pensioned because of physical or mental defects or infirmities, or because of alleged permanent injury shall be free to accept and discharge the duties of any other job or position, private or public, appointive or elective, without suffering the loss of any pension rights or benefits. No pension rights or benefits shall be impaired nor shall any pension payments be discontinued under the above provisions until the Commission shall have pursuant to such provisions and after such examinations determined that such person is able to resume active work and service. (Pvt. Acts 1943, c. 47, sec. 43-c; c. 272; Pvt. Acts 1945, c. 188.)"

Section 305: "All classified employees injured in the discharge of their duty shall continue to draw their full compensation during the time he or she may be forced to lay off temporarily on account of such injury; and if said injury received in the line of duty is permanent and such as to incapacitate from active service, such person shall then be pensioned, regardless of how short a time they may have been serving at the time that they received such injury. (Pvt. Acts 1943, c. 47, sec. 43-e.)"

Under section 260, Nashville City Charter, defining "class," and section 285 defining "demotion," complainant was clearly demoted and put into a different class of a

lower rank or level when he was transferred from pipeman to fire alarm operator.

As authority for transferring complainant from the position of fireman to the lower rank of fire alarm operator defendants rely upon the provisions of section 303, supra, where it is said: "Provided, however, where an employee has been granted a pension as hereinabove provided and thereafter recovers sufficiently to resume active work and service in a position which pays less salary than the position held when pensioned, and such person thereafter becomes unable to efficiently discharge the duties of such new or any subsequent position and is pensioned by reason thereof, such person shall be entitled to receive the pension originally granted." They insist this provision implies that the city may assign an employee to a position of a different class and lower salary and rank, and force him to take such position and thereby lose his pension when he would otherwise be entitled to it. We cannot follow that reasoning. When the foregoing provision is construed with other sections which provide that an employee shall not be reduced in salary or rank (section 150); and that he cannot be changed from a position of one class to a position of another class, even of the same level and in the same department, without his consent (section 285); we reach the conclusion that an employee cannot be assigned to a position of lower rank than his regular position, without his consent.

Defendants insist that the clause in section 305 of the charter which relates to pension rights of an employee who is injured in line of duty that provides "if said injury received in the line of duty is permanent and such as to incapacitate from active service, such person shall then be pensioned," means: (1) "That an injured employee is not entitled to a pension, if he is able to perform

active service in any position that the City acting reasonably and justly offers him." (2) "Incapacitate from active service in the position held when injured and in any other position, particularly when in the same department, on the same or higher level, paying the same or a higher salary, which the City lawfully offers him." (3) The employee may be assigned by the city to a position of a different class and lower rank and salary, without his consent, and thereby defeat his pension; if the injuries do not prevent his performing the duties of the new position, and he is paid the salary which he received in his old position.

■ It is neither necessary nor proper for us to respond to all these contentions. The pleadings and established facts in this case only require a consideration of the contention of defendants that the employee cannot receive his pension for injuries in line of duty when he is qualified to hold a position which is offered him by the city of a different class and of lower level rank, and salary than his regular position, provided the city pays such employee his former salary.

■ The chancellor rejected this contention of defendants on the ground that the city could not lawfully employ complainant as a fire alarm operator which has a fixed salary of $150 and pay him $170, which is the fixed salary of a pipeman. We agree with the conclusion which the chancellor reached. The legislature did not intend to permit the city to reduce an employee in rank, level, and dignity and change his class of employment by forcing him to accept a position which would accomplish that result; and then supplement such lower salary by an amount sufficient to pay the employee his former salary, and thereby deprive him of his pension. If we should establish such a rule in the instant case, the rule could

be applied to compel an employee of the city to accept any position of a different class and a lower level and rank, provided the employee received his original pay; and by this method defeat his pension. The legislature never intended for transfers to be manipulated so as to accomplish that result.

As stated, it is not necessary for us to pass upon the question which would arise if complainant were tendered a promotion by the city to a position for which he was qualified; or if he were offered a position by the city of the same class and of equal rank and salary as his old position for which he was qualified. No such question is presented by the pleadings and proof.

■ The intervening petitioners prayed for a declaratory judgment under Code sections 8835-8847. Complainant did not seek such relief. The intervening petitioners are not entitled to a declaratory judgment. They are members of the fire department of the City of Nashville, but they have not been injured in line of duty. They have no controversy with the City of Nashville about a pension. They may never have such controversy. At most, they belong to a group, some of whom, might have a controversy with the city in the future about a pension because of injuries received in line of duty. Such future, remote, uncertain probabilities of a controversy or claim against the city for a pension do not support or justify a declaratory judgment in this cause. McClung v. City of Elizabethton, 171 Tenn. 455, 105 S. W. (2d) 95; Hodges v. Hamblen County, 152 Tenn. 395, 277 S. W. 901; White v. Kelton, 144 Tenn. 327, 232 S. W. 668.

■ Defendants complain about this portion of the decree of the chancery court: "Said pension is further subject to the provisions contained in Section 43-c of the Charter of the City of Nashville, as amended, to the effect

that if the complainant recovers from his said injury to the extent that he is able to resume active work and service in the position of pipeman, the payment of said pension shall thereupon be discontinued.''

A careful reading of the opinion of the chancellor and the decree convinces us that the chancellor did not mean to decree that the city was compelled to pay complainant's pension until such time as complainant might recover to such an extent that he could resume active duty as a fireman. The provisions of section 303 of the charter, Private Acts 1943, ch. 47, sec. 43-c, relating to the question of complainant's recovering from his injuries so he could resume active work and service are for the benefit of the city. The city may take advantage of section 43-c of the Act at any time. It would, however, be beyond the scope of the pleadings and proof to attempt an adjudication in this case of complainant's rights under a supposititious set of facts which may never arise. The above-quoted words in the decree of the chancellor are superfluous. They do not, and cannot, add to nor subtract from, defendants' rights under section 43-c, Private Acts of 1943. Those rights must be ascertained and adjudicated in another proceeding.

All assignments of error are overruled and the decree of the chancery court is affirmed with costs. Remand for the enforcement of the decree.

Felts and Howell, JJ., concur.