## 19170

Ora Bell WEEKS, Appellant, v. George Lee FRIDAY, Dorrie Friday and Canal Insurance Company, the alleged uninsured motorist carrier of whom Canal Insurance Company is, Respondent.

(179 S. E. (2d) 909)

448

*Messrs. Lee and Ball,* and *J. Frank Hartman,* of Columbia, *for Appellant,*

*Messrs. Cooper, Gary, Nexsen & Pruet,* of Columbia, *for Respondent,*

February 11, 1971.

BRAILSFORD, Justice:

The appellant, Ora Bell Weeks, brought an action for injuries received when the taxicab she was driving collided with an uninsured automobile in Columbia on October 1, 1966. The taxicab was insured under a policy issued to her employer by Canal Insurance Company, the respondent. When served in connection with the action against the alleged uninsured tort-feasors, Canal appeared specially to

move that service upon it be quashed. Canal argued that its policy was not required to contain uninsured motorist coverage, nor did it in fact do so. The circuit court agreed, quashing service. This appeal followed.

Section 46-750.33 of the Code of 1962, as amended, forbids the issuance or delivery of any policy of personal injury or property damage automobile liability insurance unless it contains an endorsement protecting the insured from injury caused by uninsured motorists. Although this section is part of the Motor Vehicle Safety Responsibility Act, as amended, presently codified as Chapter 8 of Title 46, we have rejected the view that the section's application is restricted to policies required to be certified under that Act. *Hatchett v. Nationwide Mut. Ins. Co.,* 244 S. C. 425, 137 S. E. (2d) 608 (1964). Cf. *Pacific Ins. Co. of New York v. Fireman's Fund Ins. Co.,* 247 S. C. 282, 147 S. E. (2d) 273 (1966). Accordingly, the fact that the policy issued by Canal was not certified to the Highway Department as proof of financial responsibility under the Act does not immunize it from the uninsured motorist requirement.

However, Canal relies on two other sections of Chapter 8 to confer immunity. The first is Section 46-702(7) (i) :

" * * * *Other required policies unaffected.* (Chapter 8) shall not be held to apply to or affect policies of automobile insurance against liability insuring public carriers or policies which may be required by any other law of this State, any law or ordinance of any municipality or any (federal law), and those policies, if they contain an agreement or are endorsed to conform with the requirements of this chapter, may be certified as proof of financial responsibility under (Chapter 8)."

Section 32-35, of the Columbia City Code, formerly Section 36-6, required taxicabs  during the period in question to carry a prescribed minimum of liability insurance. Since its policy insured a common carrier and was required by municipal ordinance, Canal contends that, by virtue of Sec-

tion 46-702(7) (i), *supra*, the policy is one to which Chapter 8, with its uninsured motorist provisions, does not apply.

Section 46-702(7) (i) first appeared as Section 23(a) of the Safety Responsibility Act of 1952, 47 Stat. 1853. The Safety Responsibility Act, our first comprehensive legislative effort to encourage widespread automobile insurance, in essence penalized the failure of a driver or owner to procure and certify an insurance policy following an accident. Twenty-seven years before passage of this Act, the legislature had signaled out from the motoring public a large segment of the public carrier industry and subjected it to *mandatory* insurance requirements. Section 5 of Act No. 170 of 1925, presently codified as Section 58-1481, required certain public carriers to hold insurance policies containing provisions prescribed by the Highway Commission (later changed to what is now the Public Service Commission. 35 Stat. 1238 (1928) ). By 1952 the provisions being prescribed by the commission for mandatory policies dealt both with policy limits and conditions of coverage. See Public Service Commission Rule 57, 1952 Code, Vol. 7, p. 804. Some of these provisions differed significantly from the corresponding provisions which a policy had to contain in order to be certified as proof of financial responsibility under the new Safety Responsibility Act. No reason has been suggested, and none occurs to us, for denying uninsured motorist coverage to insureds under liability policies issued on taxicabs. We are persuaded that the legislature did not intend this inharmonious result and that Section 23(a) of the Act, the parent of Section 46-702(7) (i), was intended merely to forestall the contention that certification of a policy under the Act would obviate the need for compliance with the more rigorous policy requirements of other applicable laws and regulations such as Rule 57. We are convinced that this construction, which we adopt, conforms to the intention of the legislature.

Canal also invokes Section 46-704 of the 1962 Code as a bar to the application of Chapter 8's uninsured motorist

requirement to the taxicab policy in question. That section reads in relevant part:

"* * * (Chapter 8) shall not apply with respect to any (government-owned vehicle), nor, except for (certain named sections), shall it apply, with respect to any motor vehicle which is subject to other laws of this State which require their owners to carry insurance or to place security, in a manner which would make those owners carry insurance or place security in addition to the amounts required by this chapter."

Since the record before us fails to show that the Canal policy insured a motor vehicle "subject to other laws of this State which require (its owner) to carry insurance," the shelter of this section is unavailable to Canal in any event. It is, nonetheless, appropriate to note that Section 46-704, so far from removing from safety responsibility coverage vehicles mandatorily insured under other laws, contemplates their inclusion. The section forbids the application of Chapter 8 in such a way as to arrive at one particular outcome deemed inequitable by the legislature, namely, the imposition on mandatory insureds of a second, cumulative requirement as to policy limits. Inferentially, the chapter's application to those mandatorily insured under other laws was contemplated, so long as the single proscribed result was avoided.

This view of Section 46-704 is reinforced by a comparison of its provisions with those of the Virginia code section from which it was fashioned.[1] The Virginia section treats state-owned vehicles and mandatorily insured public carrier vehicles alike. Both are exempted from the bulk of that state's financial responsibility act. Our Section 46-704, by contrast, distinguishes the two classes of vehicles. Virginia's exemption is followed for government-owned vehicles but rejected for mandatorily insured carrier vehicles. The langu-

---

[1] See *Laird v. Nationwide Ins. Co.*, 243 S. C. 388, 134 S. E. (2d) 206 (1964). The corresponding Virginia statute is Section 46.1-392, Code of 1950 (1967 Repl. Vol. 7).

age our legislature chose to substitute for the clearly exempting language of the Virginia section reveals an intention to depart from that state's treatment of mandatorily insured carriers.

Lastly, Canal points to the fact that companies issuing policies required by state laws other than the Safety Responsibility Act have not been permitted to report such policy experience in figuring their share of disbursements from the uninsured motorist fund. This is said to constitute contemporaneous interpretation of the statutes involved by a state administrative agency, entitled to judicial respect in the construction of ambiguous statutes. The annual orders of the Insurance Commission referred to are not before us, but the order of the court below characterizes them as excluding from reportable experience "premiums on risks operating under *any* public franchise requiring a license from federal, state, county or municipal government * * *." Such language gives no indication that mandatory insureds were the only class whose policies were not permitted to be considered in figuring dispersals from the fund. The orders in question therefore fail to show that the sections discussed above account for the administrative practice.

The order of the court below is accordingly

Reversed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.