### 20553

Robert L. KNIGHT, Respondent, v. BOARD OF TRUSTEES OF FIREMEN'S RETIREMENT AND PENSION FUND OF the COLUMBIA FIRE DEPARTMENT and the City of Coumbia, Appellants.

(239 S. E. (2d) 720)

Roy D. Bates and Danny C. Crowe, of Columbia, *for Appellants,*

*Hyman S. Rubin, Jr., of Rogers, McDonald, McKenzie, Fuller & Rubin,* Columbia, *for Respondent,*

November 30, 1977.

*Per Curiam:*

The order under appeal sets forth the material facts and correctly disposes of the issues involved. With minor changes and deletions the order is reported as the judgment of this Court.

## ORDER OF JUDGE MOSS

This action was brought pursuant to South Carolina Code § 61-381 *et seq.* (1962), and more specifically under § 61-428 *et seq.* (1962), applicable to the City of Columbia. By agreement of the parties, the case was presented to the Court without a jury for determination of stipulated issues of law.

On June 11, 1974, the Plaintiff, while in the employment of the City of Columbia as a firefighter, sustained an injury to his back when he fell through the roof of a burning house during a firefighting operation. According to Dr. Emmett Lunceford, an orthopedic specialist, the Plaintiff sustained a 10 percent permanent impairment of function of his back;

according to Dr. Edwin K. Fennel, also an orthopedic specialist, a 10 percent permanent general bodily impairment. The uncontroverted medical testimony of these specialists was that the Plaintiff was thereafter physically unable to perform the duties of a firefighter, the position for which he was hired. Coupled with this medical testimony, the Plaintiff's uncontroverted testimony established that his motion and activities have been limited as a result of his injuries, that he has continued to take prescribed medication for pain following two periods of hospitalization, and that his medical condition has been an adverse factor in his efforts to obtain employment.

The Plaintiff, in reliance upon these facts, applied to the Board of Trustees of Firemen's Retirement and Pension Fund of the Columbia Fire Department (hereinafter referred to as the "Board") for disability retirement benefits pursuant to the cited Code sections. Following the evidentiary hearing before the Board, the Plaintiff was advised by the Defendants that his application for disability benefits was denied because he was not totally and permanently disabled within the meaning of S. C. Code § 61-428 (1962). Pursuant to that section, the Plaintiff appealed to this Court for a review of this finding along with related relief.

The only issues before this Court were the following: first, whether the Plaintiff should have been deemed by the Board, in view of the evidence and within the meaning of the applicable statutory and case law, totally and permanently disabled; and second, whether the decision of the Board in denying benefits was arbitrary or amounted to abuse of discretion. A determination of the first question is dispositive of the second.

A finding on the issue of disability turns upon the proper interpretation of the language "permanent and total disability" contained in § 61-428. At the outset it should be noted that a statutory interpretation by the Defendants does not involve the exercise of administrative ex-

pertise to which this Court must defer, and it is therefore within this Court's purview to interpret the applicable statutes. In doing so, the provisions of the Act should be examined in their entirety. 62 C. J. S. Municipal Corporations § 614c.

With respect to the crucial language "permanent and total disability" contained in § 61-428, the Plaintiff contends that total and permanent disability within the meaning of this remedial legislation is to be construed within the context of one's accustomed employment. The Defendants' position is essentially that the Plaintiff's disability must be viewed in a broader context, inferentially to the point of being unable to perform any gainful employment in order to qualify for benefits under § 61-428. For the reasons cited hereafter, the Court finds that the Defendants' position is untenable and that the Plaintiff should have been awarded the benefits for which he applied.

While the Court is aware of no cases interpreting this Act, nor have the parties supplied any, there are numerous analogous cases decided in this jurisdiction. For example, in the case of *Berry v. United Life and Accident Insurance Company,* 120 S. C. 328, 332, 113 S. E. 141, 142 (1922) the Supreme Court of this State interpreted the phrase "totally and continuously unable to pursue any gainful occupation" to mean inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation in substantially his customary and usual manner. In the case of *Taylor v. Southern States Life Insurance Company,* 106 S. C. 356, 91 S. E. 326 (1917), the Court stated "he is deemed totally disabled when he is no longer able to do his accustomed task, and such work as he has only been trained to do, and upon which he must depend for a living." In *Blakeley v. Prudential Insurance Company of America,* 187 S. C. 263, 197 S. E. 670 (1938), the Court defined disability in terms of an inability to pursue the occupation in which the person was previously engaged.

The concept of disability advanced by the Court in these cases has been consistently upheld in this jurisdiction, a quite recent reaffirmation occurring last year in the case of *Coker v. Pilot Life Insurance Company*, 265 S. C. 260, 217 S. E. (2d) 784 (1975). By analogy to these cases, it would logically follow that the language here in dispute means disability to perform the task in which the Plaintiff was engaged prior to his back injury, to wit, that of firefighting.

Although the cited cases involve primarily disability insurance claims, the Plaintiff's position finds abundant if not uniform support in cases closely in point from other jurisdictions dealing with remedial legislation such as this. For example, in *Simmons v. Policemen's Pension Commission*, 111 N. J. L. 134, 166 A. 925 (1933), an on-duty accident impaired the hearing and vision of a motorcycle policeman to the extent that he was no longer able to perform the regular functions of his job, although he was deemed capable of desk duty or other such light work. The New Jersey Supreme Court held that the policeman was disabled within the meaning of the pension statute. The following is taken from that case at page 926:

The act itself gives no definition of "permanent disability," but the natural meaning in the case of a policeman is that it is such as to incapacitate him from reasonably performing the ordinary duties of a policeman, and similarly in the case of a fireman. . . . If a policeman is unable to perform the ordinary everyday duties of a policeman, and is permanently unfitted therefor, he is under permanent disability, and it is no answer to say that the statute does not enable him to retire, because he is able to sit at a desk and make entries in a book. The statute might well provide for such substitute occupation, but it has not done so. We think the theory of our statute is that a fireman is a fireman, a policeman a policeman, and neither a desk clerk; and that a policeman permanently disabled to do his ordinary duty

as such and otherwise within the statute is entitled to invoke it.

The Oklahoma Supreme Court, is addressing the same question, stated as follows: "We think this question only can be answered by saying that a policeman becomes disabled within the meaning of those provisions when he can no longer perform the regular duties of a policeman." *Board of Trustees of Police Pension and Retirement System of Oklahoma City v. Faris,* 470 P. (2d) 981, 985 (Okl. 1970). Likewise, in Iowa the Court held that a police matron rendered unable to perform her routine duty by hypertensive cardiovascular disease was disabled:

It should be kept in mind that plaintiff was a police matron. She was not employed in a calm or sedentary position.

To show that she was disabled as a police matron it was not necessary that she be disabled from all activity. *Butler v. The Pension Board of Police Department,* 259 Iowa 1028, 147 N. W. (2d) 27, 30 (1966).

The applicable West Virginia provision allows for disability benefit retirement where one has "become so physically or mentally permanently disabled, regardless of the cause therefor, as to render necessary his retirement from *all services* in such department . . ." West Virginia Code §8-22-24 (Emphasis added). The case of *Spencer v. Yerace,* 155 W. Va. 54, 180 S. E. (2d) 868 (1971) is in point:

Though the statute uses the words "all service" it is clear that the Legislature meant all ordinary services of an active policeman and did not intend to deny a policeman, who because of permanent disability is incapable of performing all the ordinary services of an active policeman, his pension because his permanent disability does not prevent him from doing desk duty or light work. * * * The Petitioner is a policeman, not a desk clerk, and a desk clerk is not a policeman. 180 S. E. (2d) at 872, 874.

A case that presents factual elements virtually identical to those of the instant case is *Pueblo Fireman's Pension Board v. Hubersberger,* 132 Colo. 344, 288 P. (2d) 352 (1955). It is quoted in pertinent part:

The sole question presented by this writ of error is: Can a captain in a fire department who injured his back while acting in such capacity and in the line of his duties . . . be denied pension where the facts show that he is so disabled as not to be able to perform his duties as such captain, and then be transferred by the Board in charge of such pensions to a position as a switchboard operator.

288 P. (2d) at 353.

The Court held not, even though the job was still within the Fire Department and the pay was the same as that for his former position.

The Colorado Court has also ruled that a police officer retired due to service-sustained total disability does not lose benefits awarded him under the pension plan when he subsequently accepts public employment in another branch of municipal government. See *Currigan v. Stone,* 136 Colo. 326, 317 P. (2d) 1044 (1957). The Tennessee Supreme Court has decided that the legislature could not intend to force disabled employees to accept a change in class of employment and a reduction in rank, level and dignity for the purpose of lowering or stopping pensions. See *Woodroof v. City of Nashville,* 29 Tenn. App. 426, 197 S. W. (2d) 4, 8 (1946).

The Plaintiff's position is further supported by what appears to be a clear reading of the legislative intent in passing this pension act. The provisions of the act should be examined in their entirety. 62 C. J. S. Municipal Corporations § 614c. Reference is made in § 62-428 to a finding of disability and retirement subject to the conditions of §§ 61-429-31. Under § 61-430, the Board is empowered to require examinations of pensioners at least once

a year "for the purpose of determining whether or not the pensioner has sufficiently recovered from his disability to *return to his former position.*" (Emphasis added). The emphasized language plainly suggests that the standard for determining total and permanent disability as contained within the four corners of the act is bottomed upon the employee's ability to resume his former position. Section 61-431 explicitly provides that pension payments to a pensioner or retirement for disability shall cease when the Board upon medical examination determines "that the pensioner is not actually totally and permanently disabled but is *able to return to the position of employment he occupied at the time of retirement.*" (Emphasis added). The clear logical implication of this language is that if one is unable by reason of permanently impaired health to return to the position of employment formerly occupied then he should be deemed totally and permanently disabled under the act. If the interpretation advanced by the Defendants were adopted, the language emphasized would render the pension scheme irrational and would produce incongruous results. For example, the Board could deny benefits to one employee upon initial application based on a 10 percent disability and yet another employee who has previously qualified for disability based on a far higher percentage of impairment but whose condition has improved to only a 10 percent impairment would be eligible for a continuation of benefits indefinitely. The arbitrariness of such a result is more than academic; the Plaintiff in the instant case would doubtless qualify for a continuation of benefits under the evidence given since he has been deemed unable to return to the job previously held by him, but at the same time, the Defendants would deny him benefits upon initial application, as has been done, because of his ability to do some gainful work less physically demanding than that to which he was accustomed as a fire-fighter.

Policy considerations also favor a construction of this state's pension act in line with the constructions given those cited above. The purposes of the act are reme-

dial and beneficent, and therefore the statutes "should be liberally construed in favor of those to be benefited and the objects sought to be accomplished." 62 C. J. S. Municipal Corporations § 614c. The objects sought to be accomplished by such statutes are to promote efficiency and continuity of service and to provide public employees in high risk jobs the measure of security needed to insure uninhibited devotion to the public good. The interpretation urged by the Plaintiff is consonant with such a scheme and recognizes in a meaningful way the transformation of the employee from a condition of physical health to one of physical impairment. By contrast, the construction proposed by the Defendants would leave a public employee victim to his unfortunate accident and resulting injuries and in many cases largely unemployable but at the same time without benefits unless catastrophically impaired.

The Defendants have placed great reliance upon the assumed exclusive applicability of § 61-432 to the Plaintiff in this case. This reliance is misplaced for a number of reasons. First, it is § 61-428, and not §61-432, which deals with injury sustained by an employee *while in the performance of his duties* in the Fire Department." (Emphasis added). Section 61-432, by contrast, not only does not contemplate an injury sustained in performance of one's duties, but arguably does not even concern injury at all; the section merely refers to one who becomes "unfit" for service, for whatever reason. This statute would give, undoubtedly by design, a wide latitude to the Board to retire an employee of long standing (there is a minimum ten year service requirement) either because he would be ineligible for a disability retirement under § 61-428 or for any of a variety of reasons which may be sufficient to the Board to remove him from service. In this connection, it should be noted, if not emphasized, that a disability retirement under § 61-428 is initiated upon application of the employee, whereas an unfitness retirement under § 61-432 is apparently a discretionary retirement upon the initiative

of the Board. In the latter section it is said that the Board "may retire" the employee, whereas in the former section it is said that the employee "shall upon application be retired" under appropriate circumstances. To illustrate this difference to extreme, it is arguable that an employee of ten years standing who injured himself at home could be retired with benefits under § 61-432 but would be clearly ineligible for a disability retirement under § 61-428. Similar distinctions could be made between cases of unfitness under § 61-432 involving perhaps psychiatric, psychological or personality deficiencies which would allow retirement and those under § 61-428 which must arise out of job performance and which involve injury or other physical disability. Further distinctions between the two sections are that § 61-428 sets out a procedure for obtaining benefits which, aside from being initiated by the employee, provides for examination by doctors, the submission of medical and other evidence by the applicant, review of the Board's decision through the Courts, and (under § 61-430 and § 61-431) followup examinations, determinations, and scrutinies. Under the more discretionary § 61-432, none of these procedures apply. Thus, it is clear that the Defendants' contention that § 61-432 is apropos to the disability sustained by the Plaintiff is erroneous. Section 61-432 presumably may be used in diverse ways, but it may not be used to define what is meant by total and permanent disability under § 61-428. The Defendants' apparent confusion on this point may stem from the perhaps errant black letter subtitle of § 61-432, which was doubtless incorporated for convenience during the codification process. As may be gleaned from the body of the statute, which is the actual law as adopted by the legislature, § 61-432 deals not with disability which is less than total and permanent, but with a pension which is less than that provided for total and permanent disability. There is no mention of a "disability less than total and permanent" in the original act as it passed the legislature (1949 [46] 293), nor is the Court aware of any amendment to the act which would make the subtitle a substantive part of the section.

For the foregoing reasons, it is ordered, adjudged and decreed as follows:

1. That the Plaintiff be retired pursuant to § 61-428;

2. That his retirement shall be effective as of September 10, 1975, the date of the Board's denial of benefits to the Plaintiff, or at such time thereafter as mandated by the terms and priorities of § 61-434;

3. That the Defendants shall make an immediate accounting and tender of past due benefits.

Affirmed.