## 21012

X. O. BUNCH, Jr., President, Santee Cement Carriers, Inc., Dupree Westbury, President, Westbury Trucking Company, Inc., and Aggregate Haulers Conference, Burton N. Lanier, President, Aggregate Haulers, Inc. and Motor Transportation Association of South Carolina, Inc., Individually and as representatives of a class including all other similarly situated, Respondents, v. Paul COBB, as Chief Highway Commissioner of the South Carolina Highway Department, Appellant.

(257 S. E. (2d) 225)

*Atty. Gen., Daniel R. McLeod, Asst. Atty. Gen., Rich-ard D. Bybee* and *Staff Atty., William L. Todd,* Columbia, *for appellant.*

*Harry M. Lightsey, Jr.,* Columbia, *for respondents.*

July 26, 1979.

RHODES, Justice:

At issue in this case is the application of § 56-5-4170, 1976 S. C. Code (Cum. Supp. 1978). This section empowers the South Carolina Department of Highways and Public Transportation (hereinafter the Department) to issue permits which allow oversize and overweight vehicles to travel upon the State's highway system. Lawful weight limits for vehicles operated upon the highways of the State are established by § 56-5-4140, S. C. Code (Cum. Supp. 1978). The statute under consideration grants the Department the authority by issuing special permits to exceed the statutory limitations when the public interest will be served thereby.

The respondents represent as a class those persons who are engaged in the business of transporting commodities over the highways of the State. In the present action, they sought a declaratory judgment that § 56-5-4170(a), as of July 1, 1956,[1] and as of the present time, authorized the Department to issue single permits which would allow multiple trips of overweight vehicles over the interstate highway system of the State. The lower court concluded that the Department had discretion to issue multiple-trip permits. We reverse.

Section 56-5-4170(a) (Cum. Supp. 1978) provides:
(a) The Department with respect to the highways under its jurisdiction, subject to the conditions prescribed in subsection (b), may, in their discretion upon application in writing and good cause being shown therefor to the effect that it is in the public interest, issue special permits in writing authorizing the applicants to operate or move vehicles or combinations of vehicles of a size and weight of vehicle or load exceeding the maximum specified in this article or otherwise not in conformity with the provisions of this article upon any highway under the jurisdiction of the author-

---

[1] The significance of this date is set forth *infra.*

ity issuing such permit. The application for any such permit shall specifically describe the vehicle and load to be operated or moved and the particular highways for which a permit so to operate is requested. Every such permit shall be carried in the vehicle or combination of vehicles to which it refers and shall be open to inspection by any police officer or authorized agent of any authority granting such permit, and no person shall violate any of the terms or conditions of such special permit. The Department shall charge a fee of five dollars for each permit issued, and fees collected by the Department pursuant to this provision shall be placed in the State highway fund and used for defraying the cost of issuing and administering such permits, and for other highway purposes.

This statute must be read in conjunction with 23 U. S. C. § 127 which directs that federal funds shall not be appropriated to any state allowing vehicles to travel upon the interstate system with weights in excess of certain specified maximums contained in the federal statute or the corresponding weights existing in the various states on July 1, 1956, whichever is greater. Thus, if state law, as of July 1, 1956, authorized variations from the stated maximum weights by special multiple-trip permits, such variations are "grandfathered" by the federal statute. It is because of the potential conflict related to federal funding that the respondents have asked that the permit statute in question be interpreted as of July 1, 1956. While the appropriate question is whether the statute authorized multiple-trip permits on July 1, 1956, we find that the 1956 version of this statute is essentially the same as § 56-5-4170 (Cum. Supp. 1978) for purposes of this appeal, and this latter codification will therefore be referenced in disposing of the issues here under consideration.

Size and weight limitation laws were first established statewide with the enactment of Act No. 685, 1930 S. C. Acts 1192. By express provision, permits is-

sued under this earlier Act were confined to "single-trip" use. Section 4(A) of that Act provided:

Any permit issued by the State Highway Department, or county road authorities, for the operation of a vehicle failing to come within the limits established by this Act, or other limits already fixed by law, shall be in writing and shall be *limited to one trip of the vehicle* authorized to be moved or operated, as well as to the roads which are to be traversed by the said vehicle. Any such permit shall contain such further restrictions as in the discretion of the issuing authorities may seem appropriate. (Emphasis added.)

Size and weight laws were reenacted by the General Assembly with Act No. 845, 1938 S. C. Acts 1719. Article III, Section 9 of that Act, authorizing the issuance of special permits, is worded essentially the same as § 56-5-4170, and is therefore the direct precursor of the current statute now in force. The 1938 Act was a complete and general revision of the 1930 Act and set forth the conditions under which an overweight or oversize permit could be issued by the Department. The single-trip limitation, however, was not expressly contained in the latter enactment.

The lower court held that the deletion of the single-trip restriction in the 1938 Act was decisive of the General Assembly's intention to implicitly authorize the issuance of multiple-trip permits. We disagree, concluding that the specific wording of the current statute, when coupled with subsequent amendments thereto, compel the opposite result.

The literal language of § 56-5-4170 which was first embodied in the 1938 Act provides that ". . . [t]he application for any such *permit* shall specifically describe the *vehicle* and *load* to be operated or moved and the particular highways for which a permit so to operate is requested." (Emphasis added.) Since the specific wording of the statute is stated in the singular, and because the Department has only that authority which is specifically granted to it by statute, *Piedmont and Northern Railway Company v. Scott,* 202 S. C.

207, 24 S. E. (2d) 353 (1943), we think the General Assembly clearly intended to keep in force the single-trip restriction.

The single-trip interpretation has been repeatedly recognized and expressly acknowledged by the General Assembly in several enactments relating to § 56-5-4170. The clearest endorsement of this interpretation is evident in Act No. 842, 1960 S. C. Acts 1963 [codified at S. C. Code § 56-5-4180 (1976)]. Prior to the passage of this Act, mobile homes exceeding the statutory width and length restrictions could only be transported over State highways under a permit issued pursuant to the predecessor of § 56-5-4170, then § 46-667 S. C. Code (1952) (amended 1959), both of which versions contain essentially the same wording. By Act No. 842 of 1960, the General Assembly vested the Department with authority to issue mobile home haulers an open-end permit, which is ". . . a permit for a single trip with the permitee having the privilege of making additional trips to move similar type and size mobile homes over the same route or routes." The Legislature premised this Act upon the recognition that the permit statute at that time authorized only single trips and that the 1960 Act was in effect a relaxation of that restriction then in force:

Whereas, the South Carolina law, and rightfully so, does not permit the State Highway Department to license mobile homes over eight feet wide for unregulated movement over highways, but does provide that the State Highway Department may issue *individual trip permits* for moving oversize homes over highways of sufficient design standards where such movements may, in the judgment of the State Highway Department, be made without creating an undue traffic hazard; and

Whereas, the General Assembly of South Carolina, not unmindful of the potential hazards involved in moving overwidth loads and vehicles over the highways, is agreeable to relaxing the requirements for obtaining permits in advance

for *individual trips* by persons, firms or corporations who have furnished bond to assure compliance with traffic laws and State Highway Department regulations, and the payment of the required permit fees based upon trips actually made. (Act No. 842 at 1963, 4) (Emphasis added.)

In 1976, the General Assembly, again mindful of the single-trip restriction on oversize permits, extended the "open-end" permit system established for mobile homes to cover utility buildings. *See* Act No. 131, 1977 S. C. Acts 258 [codified at § 56-5-4180 (Cum. Supp. 1978)].

Thus, this legislation would have been unnecessary and a futile endeavor on the part of the General Assembly if the lower court's multiple-trip interpretation of the statute had been shared by the Legislature. To accept the multiple-trip permit interpretation would likewise render superfluous the General Assembly's later amendments to § 56-5-4170 authorizing the issuance of "annual permits" for certain vehicles. In 1975, the General Assembly amended the forerunner of § 56-5-4170, then § 46-667, *supra,* and made specific provision for issuance of an annual permit, as opposed to a single-trip permit, for vehicles or combinations of vehicles used to transport and spread lime, nitrogen and soil improvement products. *See* Act No. 186, 1975 S. C. Acts 209, *as amended by* Act No. 77, 1977 S. C. Acts 127 [codified as § 56-5-4170(c) (Cum. Supp. 1978)]. The General Assembly also expanded the authority of the Department to issue annual permits for vehicles transporting culvert pipe on public highways. *See* Act No. 516, 1978 S. C. Acts 1529.

Clearly none of the above referenced actions by the General Assembly would have been necessary if the Legislature had concurred in an interpretation of § 56-5-4170 which authorized multiple trips. Since the General Assembly is presumed to be familiar with prior legislation, *Bell v. S. C. State Highway Department,* 204 S. C. 462, 30 S. E. (2d) 65 (1944), the only construction under which we can reconcile the parent statute, § 56-5-4170, with its statutory off-

spring is an interpretation which restricts permit issuance to single trips.

Our above construction likewise accords with the Department's administrative practice of refusing to issue a permit under § 56-5-4170 which would be valid for more than one trip. A consistent mode of applying a statute by the responsible governing agency has been given considerable judicial deference in the construction of ambiguous statutes. *Weeks v. Friday*, 255 S. C. 447, 452, 179 S. E. (2d) 909 (1971). Despite its consistent policy of issuing only single-trip permits, the Department concedes that it has issued multiple-trip permits in two distinct instances: (1) during the fuel crisis of 1977 at the direction of the Office of the Governor during a declared state of emergency; and (2) at the request of tobacco haulers with overwidth loads until such practice was discontinued upon an advisory opinion from the Attorney General that it was contrary to statute.[2] However, because of the unusual circumstances of these admitted temporary exceptions, we cannot conclude that they constitute any significant interruption in the Department's otherwise consonant procedure in limiting the statutory permits to a single trip.

The second question raised by appellant's brief involves the admission into evidence through a witness of certain oral statements allegedly made by Paul Cobb, Chief Highway Commissioner, relating to past practices of the Department in issuing multiple-trip permits. This testimony was clearly admissible as an admission against interest by a party opponent. J. Dreher, *A Guide to Evidence Law in South Carolina*, p. 66 (1967). This exception is without merit.

For the foregoing reasons, we hold that § 56-5-4170(a) does not, nor did its statutory predecessor as of July 1, 1956,

---

[2] The General Assembly subsequently amended the law to allow for overwidth permits to be issued to tobacco haulers. *See* S. C. Code § 56-5-4175 (Cum. Supp. 1978).

authorize the Department to issue multiple-trip permits, and that it is limited by such section to the issuance of single-trip permits.

Reversed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.