529 S.E.2d 706

Dale C. STUCKEY, Appellant,

v.

STATE BUDGET AND CONTROL BOARD and South Carolina Retirement Systems, Respondents.

No. 25090.

Supreme Court of South Carolina.

Heard Nov. 16, 1999.

Decided March 20, 2000.

Rehearing Denied May 24, 2000.

398

John W. Carrigg, Jr., G. Randall McKay, both of Hammer, Hammer, Carrigg & Potterfield, of Columbia, for appellant.

Joseph D. Shine, of Columbia, for respondent State Budget and Control Board.

Stephen R. Van Camp, of Columbia, for respondent South Carolina Retirement Systems.

MOORE, Justice:

This appeal is from a circuit court order affirming respondent State Budget and Control Board's (Board's) final administrative denial of appellant's request to purchase two years of educational leave retirement credit. We affirm.

## FACTS

The facts in this case are undisputed. Appellant began employment as a public school teacher in August 1972 and was enrolled in the state retirement plan until she terminated her employment in June 1973. She entered law school full-time in August 1973 and graduated May 10, 1976. On October 8, 1976, she began employment with the State Department of Education.

In May 1995, appellant filed a request with respondent South Carolina Retirement Systems (Agency) for two years' retroactive educational leave pursuant to S.C.Code Ann. § 9–1–1140 which at the time provided in pertinent part:

A member who leaves employment to attend graduate school *and returns directly to employment* may establish up to two years' retirement credit by paying the actuarial cost as determined by the [State Budget and Control] Board.

(emphasis added).

Agency denied appellant's request on the ground she had not returned "directly" to covered employment. On appeal, the Board and the circuit court both affirmed Agency's decision.

## ISSUES

1. Is Agency's interpretation of § 9–1–1140 arbitrary and capricious?

2. Does it violate equal protection?

3. Did Agency miscalculate the ninety-day period?

## DISCUSSION

### 1. Arbitrary and capricious

■ The dispute in this case centers on the statutory requirement that an applicant requesting retirement credit for educational leave must have returned "directly" to covered employment. Agency interpreted the word "directly" in § 9–1–1140 to mean "immediately" but allowed a grace period of ninety days to return to covered employment. The grace period was apparently formulated to accommodate teachers who have an annual three-month lapse in employment during

the summer but it was applied to all covered employees, not only teachers. Agency found appellant's re-employment did not commence within this ninety-day period.

Appellant contends she returned directly to covered employment because she was not otherwise employed between her attendance at law school and her subsequent covered employment.

■ Both "immediately" and "next in order" are common meanings for the word "directly." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, Second Edition, Unabridged (1987). In the context of § 9–1–1140, "directly" can have either meaning and the statute is therefore ambiguous. In construing an ambiguous statute, we give great deference to the government agency's consistent application of the statute. *Bunch v. Cobb,* 273 S.C. 445, 257 S.E.2d 225 (1979).

■ Further, after appellant filed her claim, the legislature amended § 9–1–1140 to specifically provide:

A member who leaves covered employment to attend undergraduate or graduate school and returns to covered employment *within ninety days* after the member's last date of enrollment may establish up to two years' retirement credit by paying the actuarial cost as determined by the board.

(emphasis added).[1] A subsequent statutory amendment may be interpreted as clarifying original legislative intent. *Cotty v. Yartzeff,* 309 S.C. 259, 422 S.E.2d 100 (1992). The legislature's subsequent adoption of a specific time period in § 9–1–1140 is evidence of legislative intent that "directly" be given a time-related meaning.

■ Moreover, retirement statutes should be liberally construed in favor of those to be benefitted and the objective sought to be accomplished. *King v. South Carolina Retirement Systems,* 319 S.C. 373, 461 S.E.2d 822 (1995). Under appellant's interpretation, an employee who took temporary employment for no matter how short a period while awaiting covered employment would be precluded. A time-related meaning of "directly," on the other hand, promotes the objective of allowing covered employees to further their education

---

1. Effective June 19, 1996.

while encouraging their prompt return to work. We find Agency's allowance of a ninety-day grace period is a liberal construction of "directly."

Appellant contends, however, the ninety-day grace period is arbitrary and capricious. She argues it benefits teachers but penalizes lawyers since it is impossible to pass the bar examination and be admitted to practice within ninety days of graduation from law school. We note it is a common practice among state agencies, including this Court, to employ law school graduates as attorneys contingent upon admission to the bar. In fact, appellant herself began employment as an attorney with the State Department of Education before she was admitted to the bar. Lawyers as well as teachers may return to covered employment within ninety days and therefore may benefit from Agency's allowance of this grace period. We conclude Agency's interpretation of § 9–1–1140 is not arbitrary and capricious.

### 2. Equal protection

Appellant contends Agency's allowance of a ninety-day grace period discriminates in favor of teachers. She claims an equal protection violation in Agency's enforcement of the statute. This argument is without merit.

A law fair on its face may be shown to violate equal protection if it is intentionally enforced discriminatorily. *Butler v. Town of Edgefield,* 328 S.C. 238, 493 S.E.2d 838 (1997). There is absolutely no evidence in the record that Agency discriminates in favor of teachers in applying the ninety-day grace period. To the contrary, the record affirmatively indicates the ninety-day period is applied to all covered employees.

### 3. Calculation of ninety days

Appellant contends Agency erred in calculating the ninety-day grace period from her date of graduation in May 1976 rather than the date she completed the bar examination on July 30, 1976. Using appellant's calculation, her re-employment commenced within the ninety-day period on October 8, 1976.

The applicable version of § 9–1–1140 provided simply that "a member who leaves employment to *attend* graduate school and returns directly to employment" is eligible for retirement credits. The 1996 amendment specifies a return to covered employment within ninety days "after the member's last date of enrollment." This subsequent amendment, while not controlling, may be construed as clarifying the legislature's original intent. *Cotty v. Yartzeff, supra.* Further, the plain language of the applicable version of § 9–1–1140 specifies *attendance* at graduate school. The optional bar review course, which appellant took after graduation from law school, and the bar examination were not part of her attendance at law school. Accordingly, Agency did not err in calculating the ninety-day period.

**AFFIRMED.**

WALLER and BURNETT, JJ., concur.

TOAL, J., and FINNEY, C.J., dissenting in a separate opinion.

TOAL, Justice:

I respectfully dissent.

I agree with the majority that the phrase "return directly to employment" in the statute is ambiguous. Where a statute is ambiguous, this Court must construe the terms of the statute. *Lester v. South Carolina Workers' Compensation Comm'n,* 334 S.C. 557, 514 S.E.2d 751 (1999).

Initially, the majority errs in relying so heavily on the Retirement Systems's interpretation of the term "directly" in this case. While this Court will give the statutory construction of the officials charged with its administration respectful consideration, an agency's position is accorded less weight in situations, such as the current one, where the interpretation of the statute does not involve the exercise of administrative expertise. *See Knight v. Board of Trustees of Firemen's Retirement and Pension Fund of Columbia Fire Dep't,* 269 S.C. 671, 239 S.E.2d 720, 721 (1977); *see also Stone Mfg. Co. v. South Carolina Employment Sec. Comm'n,* 219 S.C. 239, 64 S.E.2d 644, 648 (1951) ("At most, administrative practice is a

weight in the scale, to be considered, but not to be inevitably followed . . .").

This Court's primary function in interpreting a statute is to ascertain the intent of the legislature. *Roche v. Young Bros., Inc. of Florence,* 332 S.C. 75, 504 S.E.2d 311, 314 (1998). Here, the legislature intended to give state employees who left state employment to pursue higher education and then return to state employment the opportunity to purchase retirement credit. When interpreting such a statute offering a benefit to state employees, we must remember the purposes of the state's retirement act are remedial and beneficent. *Knight,* 269 S.C. 671, 239 S.E.2d 720. Accordingly, the statutes will be liberally construed in favor of those to be benefitted and the objects sought to be accomplished. *Id.,* at 822, 461 S.E.2d at 823.

While the Retirement Systems's 90 day grace period may be a liberal interpretation of the phrase, it is not a rational one. The relevant group for analysis in this case is all state employees who leave for higher education. Interpreting the phrase "directly" to mean immediately while having a 90 day grace period allows one class of employees, school teachers getting graduate degrees, to purchase retirement credit while denying that opportunity to another similarly situated class, employees pursuing a law degree. The question for this Court is whether it is improper to single out a portion of the overall group for different treatment.

The requirements of equal protection are met if: (1) the classification bears a reasonable relationship to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances; and (3) the classification rests on a reasonable basis. *Robinson v. Richland County Council,* 293 S.C. 27, 358 S.E.2d 392 (1987). In order to practice law in this state, all law school graduates must take and pass the South Carolina Bar exam. *See* Rule 402, SCACR; Rule 410, SCACR. Under the Retirement Systems's approach, state employees graduating from law school are able to purchase retirement credit only if they return to employment before passing the bar exam.[1] In other

---

1. The majority points out that often law school graduates are employed by the State before the bar results are delivered. Such kind treatment

words, the Retirement Systems's interpretation prevents law school graduates from using their graduate degree if they desire to return to state employment and purchase retirement credit. Such a position directly conflicts with the legislative purpose of granting a benefit to employees seeking higher education and is not an interpretation "liberally construed in favor of those to be benefitted."

Also, the adoption of a grace period reveals the Retirement Systems understood the Legislature did not intend for "directly" to mean graduates would have to be employed the first day they were available after graduation. However, choosing an arbitrary 90 day limit that covers only a portion of the returning employees does not have a rational basis. While there is no doubt that a policy focusing solely on a 90 day limitation is simpler to administer than a policy that actually looks to see whether an employee returns directly to work after obtaining a graduate degree, choosing such a date is arbitrary where under the limit certain groups of employees are guaranteed to be excluded from obtaining the benefit.

Furthermore, the 90 day restriction was not included in the statute nor in any regulation adopted by the Retirement Systems. The Retirement Systems's failure to follow the State Register and Administrative Procedures Act in adopting a 90 day grace period should alone be enough to prevent enforcement of the Retirement Systems's restriction.[2] Failing to officially adopt the 90 day restriction as a regulation so that

cannot be counted upon for all law graduates. Furthermore, during this period the employee cannot be employed as a practicing lawyer without violating the law. The legislation itself does not violate equal protection, the agency's use of a 90 day time period violates equal protection as applied.

2. This act states:
There shall be filed with the Legislative Council and published in the State Register:
(1) All regulations promulgated or proposed to be promulgated by state agencies which have general public applicability and legal effect, including all of those which include penalty provisions. Provided, however, that the text of regulations as finally promulgated by an agency shall not be published in the State Register until such regulations have been approved by the General Assembly in accordance with § 1–23–120
S.C.Code Ann. § 1–23–40 (Supp.1998).

there would be notice of the deadline even led to the initiation of Stuckey's case. She discovered the possibility of purchasing the credit when an employee of the Retirement System told her she would qualify for the credit. Also, if Mrs. Stuckey had read the statute and all pertinent regulations while planning to attend law school, she would have received no notice that she would face a strict day limitation that she could not meet.

Based on the foregoing, I would reverse the decision of the trial court.

FINNEY, C.J., concurs.